[No. 7143-6-II. Division Two. December 19, 1985.]

ROBERT E. CROSSMAN, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

*Larry Couture,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Gregory J. Duras, Assistant,* for respondent.

WORSWICK, C.J.—Robert Crossman appeals a superior court order upholding the Department of Licensing's revocation of his driver's license. His sole contention is that the statute upon which the Department relied is unconstitutional. We affirm.

On March 29, 1982, Crossman, a Washington resident and licensed driver, was arrested for driving while intoxicated. Because he refused to submit to a Breathalyzer test, the Department suspended his driver's license for 6 months. The Pierce County Superior Court affirmed.

Crossman does not deny that his refusal to take a Breathalyzer test merits punishment. However, he argues

that the statute unfairly prescribes greater punishment for resident licensed drivers than for resident unlicensed drivers, thus violating both the federal equal protection clause and the state constitution's privileges and immunities clause (article 1, section 12), which are substantively identical. *State v. Kent,* 87 Wn.2d 103, 108, 549 P.2d 721 (1976). We disagree.

The applicable statute, former RCW 46.20.308(3), provides:

> If, following his arrest [for driving while intoxicated], the person arrested refuses upon the request of a law enforcement officer to submit to a chemical test of his breath, . . . no test shall be given. The department of licensing, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test upon the request of the law enforcement officer . . . shall revoke his license or permit to drive or any nonresident operating privilege. If the person is a resident without a license or permit to operate a motor vehicle in this state, the department shall deny to the person the issuance of a license or permit for a period of six months . . .[1]

Crossman points out that the law creates three classes of offenders: (1) resident, licensed drivers; (2) nonresident drivers possessing a nonresident operating privilege; and (3) resident, unlicensed drivers. Crossman, who belongs to the first class, admits that he is treated the same as drivers holding nonresident operating privileges; both lose their driving privileges. However, he complains that he is subject to greater punishment than a resident, unlicensed driver. He contends that the latter loses only a nebulous future right to a benefit. Further, he appears to assert that unlicensed drivers, by exploiting the appeals process, may avoid

---

[1]Laws of 1981, ch. 260, § 11. The statute has since been amended in some respects. *See* Laws of 1983, ch. 165, §§ 1, 2; Laws of 1985, ch. 407, § 3.

any punishment. These assertions lack merit.

The first step in equal protection analysis is to identify the proper standard for reviewing the legislative classification. There are three possible standards. The first is strict scrutiny, which applies if the classification is based on suspect criteria, such as race or nationality, or affects a fundamental right.[2] *Nielsen v. Washington State Bar Ass'n*, 90 Wn.2d 818, 585 P.2d 1191 (1978). Crossman asserts that this standard applies here because the statute discriminates on the basis of state of residence, which he equates with nationality. He appears to mean that Washington State residents are treated differently from nonresidents. This assertion contradicts his previous admission that the statute treats residents and nonresidents the same way. In any case, nonresidency is not the same as nationality, and is not a suspect criterion for equal protection purposes. *Equitable Shipyards, Inc. v. State*, 93 Wn.2d 465, 477–78, 611 P.2d 396 (1980). Strict scrutiny is inappropriate.

Crossman appears to argue that if we reject strict scrutiny, we should at least apply heightened scrutiny. We disagree. What has been called heightened scrutiny might conceivably be applied to a statute that accords special treatment to quasi–suspect classes, such as those based on gender or legitimacy of birth, or affects important but not fundamental interests. *See Macias v. Department of Labor & Indus.*, 100 Wn.2d 263, 268, 668 P.2d 1278 (1983); *Sanchez v. Department of Labor & Indus.*, 39 Wn. App. 80, 692 P.2d 192 (1984).[3] Crossman has cited no authority suggesting that the statute here creates a quasi–suspect class or affects an important interest. Therefore, we need not consider his argument. RAP 10.3(a)(5). Our own research has

---

[2]The privilege to drive is without doubt important, but we do not consider it a "fundamental right" as that term is used in the cases.

[3]Neither of the cited cases adopt heightened scrutiny as part of our state law, nor do we. We go no further than to acknowledge the possibility that it might be used in a proper case.

uncovered two cases stating in dicta that continued possession of a driver's license is an important right for purposes of equal protection. *See Macias v. Department of Labor & Indus., supra; Sanchez v. Department of Labor & Indus., supra,* citing *Bell v. Burson,* 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971). The issue in *Bell* was whether a state could suspend a driver's license without first giving the licensee a hearing. Resolution of the issue depended upon whether continued possession of a driver's license was a liberty or property interest that triggered due process safeguards. The *Bell* Court said: "[s]uspension of issued [driver's] licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." 402 U.S. at 539. However, neither *Bell* nor any other case holds that if an interest is important for purposes of procedural due process, it is necessarily important for equal protection purposes. Therefore, the dicta in *Macias* and *Sanchez* are unsound, depending as they do on an inapplicable federal due process case. Heightened scrutiny does not apply here.

There remains minimal scrutiny. Under this standard, we presume the challenged statute constitutional. *Paulson v. Pierce Cy.,* 99 Wn.2d 645, 664 P.2d 1202, *appeal dismissed,* 464 U.S. 957 (1983). To overcome this presumption, the challenger must show that the classification applies unequally to those within a class, that no real basis exists for distinguishing between classes, or that the classification bears no rational relation to the statute's purpose. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979 (1980).

Crossman fails to make this showing. First, RCW 46.20.308 applies equally within each class it creates. Second, there is a real basis for distinguishing between the classes. The State has the power to revoke or suspend a license or permit to drive; it has no power to revoke or suspend a license if the individual has none. The most it can

do is to deny an unlicensed driver the privilege of applying for a license; this the Legislature has done. It treats all three classes as equally as possible.

Third, the classification bears a rational relation to the statute's purposes. RCW 46.20.308 has three purposes: (1) to discourage individuals from driving while intoxicated, (2) to remove driving privileges from those disposed to drive while intoxicated, and (3) to provide an efficient means of gathering reliable evidence of blood alcohol content. *See Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 516 P.2d 205 (1973).

The classification serves the first two purposes by effectively denying the legal right to drive to anyone who refuses to submit to a Breathalyzer test. It deprives each group of driving privileges for 6 months (the revocation period has since been extended to 1 year, Laws of 1983, ch. 165, § 1). The classification has no effect on the third purpose; the evidence gathered under the statute can be used against a member of any class. In sum, the classification is constitutional.

 Crossman argues that RCW 46.20.308 actually discourages the unlicensed from getting a driver's license, because it prescribes more severe punishment for licensed drivers than for unlicensed drivers. He argues that the unlicensed driver can escape punishment altogether through loopholes in the appeals process. This argument is not well taken. First, Crossman has pointed to no loophole that allows an unlicensed person subject to that statute to obtain a driver's license within 6 months of the Department's order. In fact, while a license revocation is stayed pending appeal (RCW 46.20.308(4)), disqualification from applying for a license is not. Second, a statute is not invalid simply because someone might find a loophole to frustrate its purpose. Finally, RCW 46.20.021 makes driving without a license punishable as a misdemeanor. The prospect of a misdemeanor charge adequately encourages drivers to obtain a license.

Affirmed.

REED and ALEXANDER, JJ., concur.