[No. 6927-3-III. Division Three. March 27, 1986.]

THE CITY OF SPOKANE, *Respondent*, v. JULIE ANNE
PORT, *Petitioner*.

*Julie Anne Port,* pro se.

*James C. Sloane, City Attorney,* and *Michael A. Nelson, Assistant,* for respondent.

McINTURFF, J.—We are asked to determine whether RCW 46.20.021 and Spokane Municipal Code 16.20.021, requiring a motor vehicle operator to be licensed, unconstitutionally restrict one's right to travel.

On July 7, 1984, Spokane police officer Michael Heinen observed a motor vehicle, operated by Julie Anne Port, proceed through a steady red traffic control light in downtown Spokane. The officer stopped the vehicle and asked Ms. Port for her driver's license no less than six times. After she refused to respond to these requests, Ms. Port was arrested and cited for refusal to give information or cooperate with an officer, no valid operator's license, and resisting arrest. Spokane Municipal Code 10.07.030, .050, 16.20.021. The first of these charges was dropped prior to trial. After a district court jury found Ms. Port guilty on both counts, she appealed to the Superior Court, which affirmed the conviction. This court granted discretionary review.

Ms. Port contends RCW 46.20.021 and Spokane Municipal Code 16.20.021 are unconstitutional as applied to her because they improperly restrict her right to travel upon the public highways. It is well settled that the United States Constitution protects an individual's right to travel, although it is not always clear which constitutional provision affords the protection. *See Califano v. Aznavorian,* 439 U.S. 170, 175, 58 L. Ed. 2d 435, 99 S. Ct. 471 (1978); *United States v. Guest,* 383 U.S. 745, 16 L. Ed. 2d 239, 86 S. Ct. 1170 (1966); *Kent v. Dulles,* 357 U.S. 116, 2 L. Ed. 2d 1204, 78 S. Ct. 1113 (1958).[1] This fundamental constitutional

---

[1]*See also Edwards v. California,* 314 U.S. 160, 177, 86 L. Ed. 119, 62 S. Ct. 164 (1941) (Douglas, J., concurring); *Twining v. New Jersey,* 211 U.S. 78, 97, 53 L. Ed. 97, 29 S. Ct. 14 (1908); *Williams v. Fears,* 179 U.S. 270, 274, 45 L. Ed. 186, 21 S. Ct. 128 (1900); *Crandall v. Nevada,* 73 U.S. (6 Wall.) 35, 18 L. Ed. 744 (1867).

right applies both to interstate and intrastate travel. *Compare Shapiro v. Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969) (interstate travel) *with Macias v. Department of Labor & Indus.*, 100 Wn.2d 263, 272, 668 P.2d 1278 (1983) *and Eggert v. Seattle*, 81 Wn.2d 840, 505 P.2d 801 (1973) (intrastate travel). Freedom of movement is at the heart of our scheme of values, for it may be as keen an interest of the individual as the choice of what he reads, says, eats or wears.

 Ms. Port attempts to extend this fundamental rule, alleging she has a right, rather than privilege, to operate a motor vehicle upon public highways and streets. Consequently, she claims RCW 46.20.021 is unconstitutional as it makes the exercise of that purported right a crime. "Right" and "privilege" have assumed a variety of meanings, depending upon the context in which they are used. As used here, "privilege" means a qualified right or a particular advantage enjoyed by a class, beyond the common advantages of other citizens, Black's Law Dictionary 1077 (5th rev. ed. 1979); *see also* R. Pound, *Readings on the History and Systems of the Common Law* 468 (3d ed. 1927), whereas "right" connotes an interest belonging to every person. Black's Law Dictionary at 1190; Pound, at 467–68. *Compare* 72 C.J.S. *Privilege* (1951 & Supp. 1985) *with* 77 C.J.S. *Right* (1952 & Supp. 1985). Hence, driving an automobile on our state's public highways is a privilege and not a right because the activity is limited to a certain class of individuals, generally those over the age of 16 years, who have passed a driver's license examination. RCW 46.20.031, .120.[2] This privilege is always subject to such

---

[2]Virtually every state addressing this issue concludes that the license to drive an automobile is a privilege which may be extended to individuals under certain circumstances. *E.g., State v. Svendrowski*, 692 S.W.2d 348, 349 (Mo. Ct. App. 1985); *Department of Pub. Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1985); *State v. Coyle*, 14 Ohio App. 3d 185, 470 N.E.2d 457, 458 (1984); *Hanson v. State*, 673 P.2d 657, 658 (Wyo. 1983); *Mackler v. Alexis*, 130 Cal. App. 3d 44, 181 Cal. Rptr. 613, 622–23 (1982); *State ex rel. Hjelle v. A Motor Vehicle*, 299 N.W.2d 557, 562 (N.D. 1980); *Smith v. Cox*, 609 P.2d 1332, 1333 (Utah 1980); *cf. Gordon v. State*, 108 Idaho 178, 697 P.2d 1192, 1193 (Ct. App.) (whether termed right or

reasonable regulation and control as the proper authorities see fit to impose under the police power in the interest of public safety and welfare. *See State v. Scheffel,* 82 Wn.2d 872, 880, 514 P.2d 1052 (1973) (one does not have an absolute constitutional right to a particular mode of travel), *appeal dismissed,* 416 U.S. 964 (1974); *Crossman v. Department of Licensing,* 42 Wn. App. 325, 328 n.2, 711 P.2d 1053 (1985) (privilege to drive not a "fundamental right"); *State ex rel. Juckett v. Evergreen Dist. Court,* 32 Wn. App. 49, 55, 645 P.2d 734 (1982) (driver's license is privilege granted by State). This is because the right to a particular mode of travel is no more than an aspect of the "liberty" protected by the due process clause of the Fifth Amendment.[3] *See Reitz v. Mealey,* 314 U.S. 33, 86 L. Ed. 21, 62 S. Ct. 24 (1941). In *Reitz,* the United States Supreme Court examined the privilege to travel on our public streets and highways and concluded, in 314 U.S. at 36:

> Any appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process.

*See also Hendrick v. Maryland,* 235 U.S. 610, 59 L. Ed. 385, 35 S. Ct. 140 (1915) (states may rightfully prescribe uniform regulations necessary for public safety and order in the operation upon its highways of motor vehicles and it may *require* the licensing of drivers).

Here, RCW 46.20.021 requires a license to drive or operate a motor vehicle upon our state highways. Licensing is a means by which the State may determine whether vehicle operators have acquired a minimal standard of competence. Mandating driver competence is a public pur-

---

privilege, one's ability to travel on public highways is subject to reasonable regulation by the state), *appeal dismissed,* ___ U.S. ___, 88 L. Ed. 2d 29, 106 S. Ct. 35 (1985), *reh'g denied,* ___ U.S. ___, 88 L. Ed. 2d 912, 106 S. Ct. 874 (1986).

[3] The fifth amendment to the United States Constitution provides:
"No person shall be . . . deprived of life, liberty, or property, without due process of law . . ."

pose within the police power of the state because it furthers the interests of public safety and welfare. It is designed to improve the safety of our highways and to protect and enhance the well–being of the residents and visitors of our state. RCW 46.01.011; RCW 46.20.021. This is a reasonable and justifiable exercise of the police power.

As previously noted, Ms. Port does not allege the license requirement is unconstitutional in all circumstances. She believes the State should issue a "certificate of competence" rather than a driver's license. Ms. Port claims she is constitutionally entitled to this special status because she is not engaged in commercial travel. She relies principally upon quotations from *Thompson v. Smith,* 155 Va. 367, 154 S.E. 579, 71 A.L.R. 604 (1930) and *Chicago v. Banker,* 112 Ill. App. 94 (1904). Although the *Thompson* court declared the right to travel public highways an individual's "common right which he has under his right to enjoy life and liberty," the court also noted that the exercise of such a common right may be regulated under the City's police power if in the interest of public safety and welfare. *Thompson,* at 377. The city driver's license revocation ordinance at issue in *Thompson* was upheld except to the extent it granted broad discretion to the city's chief of police to revoke licenses. "The issuance and revocation of such [driving] permits by a city is merely a means of exercising the police power of the State delegated to the city to regulate the use of the public highways in the interest of the public safety and welfare." *Thompson,* at 376.

Nor do we find persuasive *Chicago v. Banker, supra,* where the court determined the requirement of a driver license unfairly burdens one who uses his automobile for private business and pleasure. The court conditioned the ability to drive a motor vehicle upon driving which would not interfere "with the safety of others." *Chicago v. Banker, supra* at 99. Furthermore, the issuance of a "certificate of competence" would change only the name, not the substance, of what is currently known as a "driver's license" since one cannot obtain such unless driving profi-

ciency has been demonstrated. Because our State has determined that driver education and licensing examinations enhance the ability of drivers and the safety of our highways, RCW 46.01.011; RCW 46.20.021, we hold the statute here is a reasonable regulation furthering the public safety and welfare. Only by lifting statements from context and by ignoring difficult language does Ms. Port make *Thompson* and *Banker* and other cases support her position. Providing similar examples from other cases cited by Ms. Port would only unnecessarily lengthen this opinion. *See, e.g., Gordon v. State,* 108 Idaho 178, 697 P.2d 1192, 1193 (Ct. App.), *appeal dismissed,* ___ U.S. ___, 88 L. Ed. 2d 29, 106 S. Ct. 35 (1985), *reh'g denied,* ___ U.S. ___, 88 L. Ed. 2d 912, 106 S. Ct. 874 (1986).

Lastly, Ms. Port claims the state licensing statute applies only to *commercial operators of motor vehicles.* She claims since she was not engaged in the business of transportation, she did not violate the act.

■ An unambiguous statute is not subject to construction; there is no need to resort to dictionary definitions. *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978); *Adams v. Department of Social & Health Servs.,* 38 Wn. App. 13, 16, 683 P.2d 1133 (1984); *State v. Hayes,* 37 Wn. App. 786, 788, 683 P.2d 237 (1984). An ambiguous term is one that is susceptible to more than one meaning. *Adams,* at 16; *Harding v. Warren,* 30 Wn. App. 848, 850, 639 P.2d 750 (1982).

The statute in question, RCW 46.20.021, reads: "No person . . . may drive any motor vehicle upon a highway in this state unless the person has a valid driver's license issued under the provisions of this chapter." Ms. Port's argument that this provision requires a license only for those operating commercial vehicles is clearly without merit. RCW 46.04.370 eliminates any alleged ambiguity with respect to the violation here because the section defines an operator or driver as "every person who drives or is in actual physical control of a vehicle." Since Ms. Port was in actual physical control of her vehicle when stopped,

she came under the provisions of RCW Title 46. *See, e.g., In re Arambul,* 37 Wn. App. 805, 807–08, 683 P.2d 1123 (1984).

The judgment of the Superior Court is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Reconsideration denied May 5, 1986.

Review denied by Supreme Court July 8, 1986.