[No. 9631-9-III.   Division Three.   March 1, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS W. CLIFFORD, ET AL, *Petitioners.*

*John A. Troberg,* for petitioners (appointed counsel for appeal).

*Douglas W. Clifford* and *Kelly W. Harris,* pro se.

*John G. Wetle, Prosecuting Attorney,* and *Pamela F. Payne, Deputy,* for respondent.

SHIELDS, J.—The Stevens County Superior Court affirmed the decision of the District Court and determined Douglas Clifford and Kelly Harris did not have a constitutional right, based on freedom of religion, to operate a motor vehicle without a driver's license, RCW 46.20.021. Mr. Clifford and Mr. Harris appeal; we affirm.

On August 18, 1987, an officer with the Kettle Falls Police Department stopped Mr. Clifford for driving his pickup truck with expired license tabs. The officer requested Mr. Clifford to produce his driver's license. Mr.

Clifford did not do so. After the third request, Mr. Clifford still failed to produce a valid driver's license, stating he had a constitutional right to drive on the highway. The officer ran a "driver check" and "vehicle check" through the sheriff's department radio and was advised that Mr. Clifford had no valid driver's license, and his vehicle was also unlicensed. The officer arrested Mr. Clifford for driving without a valid driver's license.

Mr. Clifford was charged with three counts of driving with no valid driver's license, the offenses having occurred on July 29, 1987, August 4, 1987, and August 18, 1987. Mr. Harris was charged with one count of driving with no valid driver's license pursuant to an arrest on July 16, 1987.

A hearing was held at the District Court concerning Mr. Clifford's and Mr. Harris' argument that forcing them to acquire a driver's license violated their right to free exercise of their religious beliefs. The District Court found the beliefs of the defendants were sincere and central to their religious convictions, but determined the statute requiring defendants to obtain a valid driver's license was not coercing defendants to violate their religious beliefs and that, even if coercive, the licensing requirement was a valid exercise of police power and furthered a compelling state interest in road safety. The court found Mr. Clifford and Mr. Harris guilty of operating a motor vehicle without a valid driver's license.

The District Court's decision was appealed to the Stevens County Superior Court. The Superior Court affirmed the District Court ruling and denied Mr. Clifford's and Mr. Harris' motion to reconsider. This court granted discretionary review.

██ Mr. Clifford and Mr. Harris essentially make two arguments. First, arguing pro se, they contend they have a "natural" right to use the public highways in the ordinary and customary manner, which we interpret as an individual's right to travel. This right, however, does not translate into a right to drive a motor vehicle. We have consistently held driving is a privilege, not a right. *See Spokane v. Port,*

43 Wn. App. 273, 275–76, 716 P.2d 945, *review denied,* 106 Wn.2d 1010 (1986), and cases cited therein. Mr. Clifford and Mr. Harris are free to travel public roads using alternative means of transportation, such as horseback, bicycle, taxi, or public transit. Requiring them to obtain a driver's license prior to operating a motor vehicle does not unconstitutionally infringe upon their freedom of movement.

■■ Mr. Clifford's and Mr. Harris' second argument, made with assistance of counsel, is that requiring them to obtain a driver's license, in violation of their religious beliefs, infringes upon their free exercise of religion. In order to obtain First Amendment protection, individuals must first prove their religious convictions are sincere and central to their beliefs. *Backlund v. Board of Comm'rs,* 106 Wn.2d 632, 639, 724 P.2d 981 (1986), *appeal dismissed,* 481 U.S. 1034, 95 L. Ed. 2d 809, 107 S. Ct. 1968 (1987). In their assertions, both Mr. Clifford and Mr. Harris claim, first:

> I have previously stated that to accept the licensing requirements of the State is to put the State on a footing equal to or superior to God, absolutely contrary to my convictions.[1]

and second:

> I also object to the licensing requirement because I have learned that the license revenue goes some 27 percent to the state general fund which then funds state funded abortions. I refuse to be responsible for an act which I believe to be murder.[2]

The religious convictions relevant to this opinion are Mr. Clifford's and Mr. Harris' claim that "Yahweh" directs them to live in the country and also commands them to assemble for religious fellowship with other "Bible believing Christians." Because of their religiously motivated country

---

[1]It is not a logical imperative that obedience to the laws of the state puts those laws on an equal footing to those of God.

[2]At trial court and on appeal, Mr. Clifford and Mr. Harris did not produce any evidence to prove their claim that licensing fees flow into the general state fund, which in turn funds abortion. Moreover, they argue for exemption from the entire motor vehicle licensing requirement, not just from the requirement they pay a licensing fee. Whether they would be entitled to an exemption from the payment of the fee is beyond the scope of this opinion.

existence, they must travel back and forth to town to obtain food, clothing, firewood, medical services, and to earn their living as construction workers. They must also travel considerable distances for religious fellowship. For these reasons, they claim they require use of a motor vehicle, but cannot abide by the state statute which requires them to have a driver's license.

"Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Backlund,* at 640. The District Court found Mr. Clifford's and Mr. Harris' convictions are sincere and central to their beliefs. This is not challenged on appeal; thus, Mr. Clifford and Mr. Harris have met the first criterion for First Amendment protection.

Next, individuals must show "'the coercive effect of the enactment as it operates against him in the practice of his religion.' . . . '[t]he challenged state action must somehow compel or pressure the individual to violate a tenet of his religious belief.'" *Witters v. Commission for the Blind,* 112 Wn.2d 363, 371, 771 P.2d 1119 (quoting *School Dist. v. Schempp,* 374 U.S. 203, 223, 10 L. Ed. 2d 844, 83 S. Ct. 1560 (1963); *Witters v. Commission for the Blind,* 102 Wn.2d 624, 631, 689 P.2d 53 (1984), *rev'd sub nom. Witters v. Washington Dep't of Servs. for the Blind,* 474 U.S. 481, 88 L. Ed. 2d 846, 106 S. Ct. 748 (1986)), *cert. denied,* ___ U.S. ___, 107 L. Ed. 2d 106, 110 S. Ct. 147 (1989). The coercive effect may take the form of an incidental burden on the free exercise of a person's religion. "The fundamental tenet involved need not be directly impacted for the regulation to be constitutionally infirm." *Sumner v. First Baptist Church,* 97 Wn.2d 1, 8, 639 P.2d 1358 (1982). *See Thomas v. Review Bd.,* 450 U.S. 707, 717–18, 67 L. Ed. 2d 624, 101 S. Ct. 1425 (1981):

Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion

exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.[3]

*See also Wisconsin v. Yoder,* 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972); *Sherbert v. Verner,* 374 U.S. 398, 403, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963). Here, the driver's license requirement does not coerce Mr. Clifford or Mr. Harris into living in the city, nor does it keep them from assembling with their fellow believers. However, Mr. Clifford and Mr. Harris are compelled to recognize the state law requiring renewal of licenses, and to pay a licensing fee if they want to obtain the benefit or privilege of a driver's license to facilitate the travel necessary to exercise their beliefs. Because Mr. Clifford and Mr. Harris have shown an indirect coercive effect, they have met the second criterion for First Amendment protection.

Not all burdens on religion are unconstitutional, however. A statute or regulation in question may be justified by a compelling state interest. "[C]onduct motivated by religious beliefs may be subject to regulation if that conduct conflicts with the exercise of the interests of third parties." *Backlund,* at 641. This is particularly true in the area of health and safety. *Backlund,* at 642. Here, the purpose of RCW 46.20.021 is to make the highways as safe as possible by requiring each potential operator to demonstrate a knowledge of rules and regulations of the road, a history of compliance with those rules and regulations, and the physical ability to safely operate a motor vehicle. Mr. Clifford and Mr. Harris argue their good driving records adequately demonstrate[4] their ability to drive safely, and any test for renewal of their driver's licenses would be perfunctory in nature. However, the license renewal procedure ensures

---

[3]This case differs factually from *Witters v. Commission for the Blind* (112 Wn.2d), *supra,* and *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 99 L. Ed. 2d 534, 108 S. Ct. 1319 (1988) in which appellants were not asked to violate any tenet of their religious beliefs in order to obtain a benefit or privilege.

[4]Their driving records for moving violations, if any, are not part of this record.

that drivers have adequate eyesight. The renewal procedure also ensures accurate records of drivers' names and addresses. Additionally, before an individual can renew his or her driver's license, all outstanding fines must be paid.[5] Finally, the State can refuse renewal of a driver's license if it has been suspended due to traffic citations, uninsured accidents, or drunk driving. Thus, the licensing statute serves a compelling state interest in law enforcement as well as a compelling state interest in highway safety. Mr. Clifford's and Mr. Harris' argument that "Yahweh" directs them to be safe drivers and that their religious community will adequately monitor them as to when they need to surrender their driver's license is not persuasive. The *Backlund* court, at page 646, dismissed a similar argument of "good intentions". In *Backlund,* the court held the government had a compelling interest in protecting the health and safety of third parties, and this interest outweighed Dr. Backlund's religious belief that professional liability insurance was not necessary. Unlike the *Sumner* case cited by Mr. Clifford and Mr. Harris, in which only the safety of other members of the religious community was involved, here the State has a compelling interest in protecting the safety of all third party highway users who share the road with Mr. Clifford and Mr. Harris.

Once the State has shown a compelling governmental interest which justifies the regulation in question, the State must also show the regulation is the least restrictive imposition on the practice of an individual's belief to satisfy that interest. *Backlund,* at 641. Mr. Clifford and Mr. Harris argue a less restrictive means does exist: an exemption applicable to just the two of them. However, at oral argument it became clear that any exemption to the licensing requirement carved out for religious reasons for Mr. Clifford and Mr. Harris would eventually be requested by a potentially unlimited number of members of their religious

---

[5]Mr. Clifford had outstanding unpaid fines of $1,083. *See State v. Clifford,* 57 Wn. App. 124, 787 P.2d 575 (1990).

community.[6] Such an exemption for an unlimited number of people would ultimately negate the State's ability to maintain highway safety. There is no less restrictive means available to satisfy the State's compelling interest in regulating the driving of motor vehicles.

The decision of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Review denied at 114 Wn.2d 1025 (1990).

---

[6]Mr. Clifford stated he believed the "chain of command" flowed from the Father, "Yahweh," to the male head of household, and that the father of the house should determine whether and when his wife and children are competent to drive.