[Nos. 59585-2, 60037-6.   En Banc.   October 21, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. SHAWN P., *Petitioner.*

THE STATE OF WASHINGTON, *Respondent*, v. DAVID W., *Petitioner.*

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL W., *Petitioner.*

554

*Jeffrey J. Jahns* and *Ronald D. Ness & Associates,* for petitioner Shawn P.

*David W.,* pro ·se, and *J. Scott Bougher,* for petitioners David W. and Daniel W.

*John W. Ladenburg, Prosecuting Attorney for Pierce County, Chris Quinn-Brintnall, Senior Appellate Deputy,* and *John M. Neeb, Deputy; C. Danny Clem, Prosecuting Attorney for Kitsap County,* and *Pamela B. Loginsky, Deputy,* for respondent.

ANDERSEN, C.J. —

FACTS OF CASE

The issue in these three consolidated appeals is whether the mandatory revocation of driving privileges, which is imposed upon minor teenagers who are convicted of consuming or possessing alcohol, violates the equal protection guaranties of our state and federal constitutions. We hold the revocation provisions in Washington's "abuse and lose" statutes[1] constitutionally sound.

---

[1] The statutory provisions challenged here are RCW 13.40.265, RCW 66.44-.365, and RCW 46.20.265.

Juvenile offender Shawn P. was found guilty of violating the law prohibiting minors from consuming alcohol.[2] He was 16 years old at the time of the offense and 17 when the disposition order was entered in juvenile court. Juvenile offender David W. was found guilty of violating the minor in possession of alcohol statute[3] when he was 15 years old. Juvenile offender Daniel W. was 15 at the time of the offense and 16 when he pleaded guilty to a charge of violating the minor in possession of alcohol law.[4]

As a consequence of the determination of guilt in each case, the trial courts were required to notify the Department of Licensing of the determination[5] and the Department was then required to revoke all driving privileges of each of the juveniles for 1 year or until the juvenile reached the age of 17, whichever was later.[6] In each of these cases, revocation was stayed pending the outcome of the appeals.[7]

Each of the juvenile offenders challenges the revocation law on equal protection grounds. Shawn P. argues that the "class" of persons affected by the challenged legislation includes all persons prohibited from possessing or consuming alcohol. The class, to his view, thus consists of all persons under the age of 21 years. Because the revocation provisions

[2]Former RCW 66.44.270(2). The law provides: "It is unlawful for any person under the age of twenty-one years to possess, consume, or otherwise acquire any liquor." The statute was amended by the Laws of 1993, ch. 513, § 1, p. 2363. The amendments caused a change in the paragraphing and RCW 66.44.270(2) was redesignated RCW 66.44.270(2)(a).

[3]Former RCW 66.44.270(2).

[4]Former RCW 66.44.270(2). Daniel W. entered an "*Alford* plea". *See North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

[5]RCW 66.44.365; RCW 13.40.265.

[6]RCW 46.20.265.

[7]The term "revocation" is used herein to refer to both a withdrawal of existing driving privileges as well as to a postponement of the right to apply for a driver's license.

of the legislation do not apply to those who are between the ages of 18 and 21, Shawn P. contends the law discriminates within the class and thus violates the fourteenth amendment to the United States Constitution. The Court of Appeals disagreed and upheld the constitutionality of the law and the finding of guilt in *State v. Preston*, 66 Wn. App. 494, 832 P.2d 513, *review granted*, 120 Wn.2d 1012 (1992). We granted Shawn P.'s petition for review on the constitutional issue.

David W. and Daniel W., whose appeals were consolidated below, argue that the challenged classification violates the equal protection guaranties of both the state and federal constitutions because it treats minor teenagers more harshly than both the 18- to 21-year-old group and the 12 years and under group. Again, the Court of Appeals disagreed and upheld the constitutionality of the law in *State v. Weese*, 67 Wn. App. 259, 834 P.2d 1099 (1992), *review granted*, 121 Wn.2d 1001 (1993). David W. and Daniel W. then petitioned for review on the constitutional issue. We granted the petition and consolidated the appeals with that of Shawn P.

One issue is presented in this court for review.

## ISSUE

Does the mandatory revocation of driving privileges, which is applicable only to minor teenagers (those 13 and older, but under 18) who are convicted of consuming or possessing alcohol, violate the equal protection guaranties of the state and federal constitutions?

## DECISION

CONCLUSION. We hold that the mandatory revocation of driving privileges, which applies only to minor teenagers who are determined to have violated the minor possessing/consuming alcohol law, is rationally related to the legitimate state objectives of promoting highway safety and deterring illegal drinking by teenagers and thus does not violate constitutional equal protection guaranties.

The challenged legislation,[8] which was enacted in 1988,[9] amended a number of existing statutes.[10] The legislation provides in pertinent part:

> If a juvenile thirteen years of age or older [and under the age of 18] is found by juvenile court to have committed an offense that is a violation of chapter 66.44, 69.41, 69.50, or 69.52 RCW, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.

RCW 13.40.265(1)(a).[11]

The statutes referred to within the above-quoted section prohibit the possession, consumption or acquisition of liquor,[12] except in limited circumstances, by any person under the age of 21,[13] and prohibit the possession, distribution and manufacture of certain drugs.[14] It is only the law relating to alcoholic beverages that is at issue in the consolidated cases before us.

Thus, under the statutory provision quoted above, if a juvenile, aged 13 to 18, is found guilty of violating RCW 66.44.270(2)(a) (consuming or possessing liquor), the court must notify the Department of Licensing. RCW 46.20.265 then requires the Department to revoke the juvenile's driving privilege. That statute provides:

> (1) In addition to any other authority to revoke driving privileges under this chapter, the department [of licensing] shall revoke all driving privileges of a juvenile when the department receives notice from a court pursuant to RCW 13.40.265, 66.44-.365, 69.41.065, 69.50.420, 69.52.070, or a substantially similar

---

[8]Laws of 1988, ch. 148.

[9]The law was amended in 1989. Laws of 1989, ch. 271.

[10]The following sections were added by the legislation: RCW 13.40.265; RCW 66.44.365; RCW 69.41.065; RCW 69.50.420; RCW 69.52.070; RCW 46.20.265. The legislation also made minor changes in other sections of RCW 46.20 and in RCW 46.04.

[11]This provision is substantially the same as RCW 66.44.365(1).

[12]"Liquor" includes alcohol, spirits, wine and beer. RCW 66.04.010(15).

[13]RCW 66.44.270.

[14]See RCW 69.41.030; RCW 69.50.401-.403; RCW 69.52.030.

municipal ordinance adopted by a local legislative authority, or from a diversion unit pursuant to RCW 13.40.265. The revocation shall be imposed without hearing.

(2) The driving privileges of the juvenile revoked under subsection (1) of this section shall be revoked in the following manner:

(a) Upon receipt of the first notice, the department shall impose a revocation for one year, or until the juvenile reaches seventeen years of age, whichever is longer.

(b) Upon receipt of a second or subsequent notice, the department shall impose a revocation for two years or until the juvenile reaches eighteen years of age, whichever is longer.

RCW 46.20.265 (part).[15]

While the legislation refers to "juveniles",[16] it is clear that for purposes of the revocation provisions, the term is limited to juveniles who are 13 years of age or older and under age 18.

The legislation thus carves out a "class" of minor teenagers, aged 13 through 17, and imposes an additional penalty upon them.[17]

The juvenile offenders claim the law violates equal protection guaranties because there is no rational basis for treating minor teenagers differently than (1) older individuals who are prohibited from consuming or possessing alcohol and (2) younger individuals who might commit the same crime.

■We have held that the right to equal protection under the law guaranteed by the U.S. Const. amend. 14, § 1 and by the privileges and immunities clause of the Washington Const.

---

[15]RCW 66.44.365(2)-(3) and RCW 13.40.265(1)(b)-(c) provide methods for reinstatement of the driving privilege after the lapse of a certain period of time.

[16]"Juvenile" is defined in the Juvenile Justice Act of 1977, RCW 13.40, as "any individual who is under the chronological age of eighteen years and who has not been previously transferred to adult court". RCW 13.40.020(14).

[17]As noted above, Shawn P. argues the challenged class is that created by RCW 66.44.270(2)(a), the statute which prohibits all persons under the age of 21 from possessing or consuming liquor. This argument is without merit as the legislative classification which is challenged is that created by RCW 66.44.365, RCW 13.40.265 and RCW 46.20.265, which require the revocation of driving privileges of juveniles aged 13 to 18.

art. 1, § 12 are substantially identical.[18] Both require that persons similarly situated with respect to the legitimate purpose of the law be similarly treated.[19]

The threshold question in any equal protection analysis is which standard of judicial review applies.[20] One of three standards will be applied, depending on the nature of the interest affected or on the characteristics of the class created by the legislation.[21] The first standard of review, strict scrutiny, applies when the allegedly discriminatory classification affects a suspect class or threatens a fundamental right.[22] A second standard of review, intermediate or heightened scrutiny, has been applied by this court and the United States Supreme Court in limited circumstances where strict scrutiny is not mandated, but where important rights or semi-suspect classifications are affected.[23] The third standard of review requires minimal scrutiny and is referred to as the rational relationship or rational basis test.[24] The statutory classification involved here does not involve a suspect or semi-suspect class[25] and does not threaten a fundamental right.[26] The par-

---

[18]*State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991).

[19]*State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992); *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987).

[20]*Haberman v. WPPSS*, 109 Wn.2d 107, 139, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988).

[21]*Coria*, 120 Wn.2d at 169-70; *Schaaf*, 109 Wn.2d at 17-18.

[22]*Schaaf*, 109 Wn.2d at 17.

[23]*See, e.g., Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 73 L. Ed. 2d 1090, 102 S. Ct. 3331 (1982) (classification based on gender); *State v. Phelan*, 100 Wn.2d 508, 514, 671 P.2d 1212 (1983) (physical liberty is an important, but not a fundamental, right, and a classification based solely on wealth will be examined under the heightened scrutiny standard).

[24]*Schaaf*, 109 Wn.2d at 17.

[25]*Schaaf*, 109 Wn.2d at 19 (juveniles form neither a suspect nor a semi-suspect class).

[26]*Spokane v. Port*, 43 Wn. App. 273, 275-76, 716 P.2d 945 (driving is a privilege, not a right), *review denied*, 106 Wn.2d 1010 (1986). *Accord, State v. Clifford*, 57 Wn. App. 127, 129-30, 787 P.2d 571, *review denied*, 114 Wn.2d 1025 (1990).

ties correctly concede that the rational relationship test is the standard against which the legislative classification here challenged should be measured.

■ The rational relationship test is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause.[27] Under this test, the legislative classification will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives.[28] The burden of proving the legislative classification unconstitutional is upon the party challenging the legislation.[29] That party has the heavy burden of overcoming a presumption that the statute is constitutional.[30] We generally will not declare a statute unconstitutional unless it appears unconstitutional beyond a reasonable doubt.[31]

The juveniles challenging the legislative classification in the present case do not meet their heavy burden.

The juveniles must do more than question the wisdom of the legislative classification; they must show conclusively that the classification is purely arbitrary.[32]

The purpose of this legislation is stated in the following legislative finding:

> The legislature finds that many persons under the age of eighteen unlawfully use intoxicating liquor and controlled substances. The use of these substances by juveniles can cause

---

[27]*Dallas v. Stanglin*, 490 U.S. 19, 26, 104 L. Ed. 2d 18, 109 S. Ct. 1591 (1989).

[28]*Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799 P.2d 235 (1990). We have sometimes stated the rational basis test as a 3-part test. *See Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 835, 601 P.2d 936 (1979), *appeal dismissed*, 446 U.S. 979 (1980). Recently we have expressed our preference for the more meaningful and more simply stated 1-part test. *Coria*, 120 Wn.2d at 172 n.4; *see also State v. Danis*, 64 Wn. App. 814, 820-21, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992).

[29]*Omega Nat'l Ins. Co.*, 115 Wn.2d at 431.

[30]*Brewer v. Copeland*, 86 Wn.2d 58, 61, 542 P.2d 445 (1975).

[31]*Forbes v. Seattle*, 113 Wn.2d 929, 941 n.12, 785 P.2d 431 (1990); *Haberman*, 109 Wn.2d at 139.

[32]*Coria*, 120 Wn.2d at 172.

serious damage to their physical, mental, and emotional well-being, and in some instances results in life-long disabilities.

The legislature also finds that juveniles who unlawfully use alcohol and controlled substances frequently operate motor vehicles while under the influence of and impaired by alcohol or drugs. Juveniles who use these substances often have seriously impaired judgment and motor skills and pose an unduly high risk of causing injury or death to themselves or other persons on the public highways.

The legislature also finds that juveniles will be deterred from the unlawful use of alcohol and controlled substances if their driving privileges are suspended or revoked for using illegal drugs or alcohol.

Laws of 1988, ch. 148, § 1, p. 592.

This finding is supported by "voluminous statistical data" demonstrating that a disproportionate number of juveniles drive while impaired and that they thus pose a serious risk to the safety of themselves and others.[33]

Motor vehicle accidents are the leading cause of death for teenagers, comprising forty-two percent of all teenage fatalities. In the United States, half of all deaths of people between the ages of sixteen and eighteen are automobile-related. Many teenagers claim that peer pressure encourages more risk-taking activities. This results in teenage drivers being responsible for five-fold the vehicle deaths of drivers between the ages of thirty-five and forty-nine and two-fold that of drivers in the twenty to thirty-four age group. . . .

. . .

Mounting evidence shows that juveniles who abuse substances and drive have an increased probability of traffic accidents.

(Footnotes omitted.) Vaughn, Kappeler & del Carmen, *A Legislative and Constitutional Examination of "Abuse and Lose" Juvenile Driving Statutes*, 19 Am. J. Crim. L. 411, 413 (1992).

Thus a purpose of the legislation is to keep young teenagers who drink off the road, providing protection not only for the young drivers, but for the rest of the public as well.

---

[33]Vaughn, Kappeler & del Carmen, *A Legislative and Constitutional Examination of "Abuse and Lose" Juvenile Driving Statutes*, 19 Am. J. Crim. L. 411, 427 (1992) (hereafter Vaughn, Kappeler & del Carmen). See also National Transp. Safety Bd., Safety Recommendation H-93-1 through -9 (Mar. 11, 1993).

The Legislature also concluded that youths would be deterred from using alcohol by the threat of license revocation. This and similar legislation in other states recognizes that young people place a high value on their drivers' licenses.[34] The purpose of this type of legislation is to help juveniles avoid using alcohol by providing the additional incentive of loss of driving privileges. The laws are thus designed, in part, to give juveniles a reason to say no and to provide them with a powerful peer-acceptable excuse to refrain from using alcohol.[35]

The juvenile offenders agree that the object of the legislation is to deter unlawful use of alcohol or drugs by juveniles and to promote highway safety and they agree that these goals are legitimate state objectives. But it is the method of achieving the purposes of the law that they challenge.

Because the legislative finding speaks in terms of all juveniles and of the problems that occur as a result of underage drinkers, the juvenile offenders here argue that the Legislature should have mandated license revocation for all persons under the age of 21 who unlawfully possess or consume alcohol. The test, however, is not what the Legislature could have done. Nor is it what this court would have done were we drafting the legislation. Once it is determined that the purpose of the legislation is a legitimate state objective, the only remaining question is whether the classification created by the Legislature is rationally related to the purpose of the legislation. "The rational basis test requires only that the statute's means is rationally related to its goal, not that the means is the best way of achieving that goal."[36]

■ Under the rational basis test, a statutory classification will be upheld if any conceivable state of facts reasonably

---

[34]*See* Vaughn, Kappeler & del Carmen, at 416.

[35]Vaughn, Kappeler & del Carmen, at 416.

[36]*Coria*, 120 Wn.2d at 173.

justifies the classification.[37] "Such a rational basis for a legislative decision need not have actually motivated the Legislature's decision."[38]

■ There are a number of rational bases for the classification established by RCW 66.44.365, RCW 13.40.265 and RCW 46.20.265.

We turn first to the Legislature's failure to include within the class those persons who are between the ages of 18 and 21 years but who are prohibited from drinking alcoholic beverages.

RCW 26.28.010 provides that "[e]xcept as otherwise specifically provided by law, all persons shall be deemed and taken to be of full age for all purposes at the age of eighteen years." Juveniles — those under the age of 18[39] — are frequently treated differently under the criminal law. Unlike offenders sentenced in adult proceedings, the aim of sentencing under the Juvenile Justice Act of 1977, RCW 13.40, is both punishment and rehabilitation.[40] Furthermore, juveniles — those under the age of 18 — are treated differently when they attempt to obtain a driver's license or own a car. A teenager generally will not be granted a driver's license unless the teenager is at least 16 years old,[41] the teen's parents or guardians approve, *and* the teenager has successfully completed an approved traffic safety education course.[42] No such restriction exists for persons who are 18 years old or older. A minor teenager also cannot legally own a car in

---

[37]*Haberman v. WPPSS*, 109 Wn.2d 107, 140, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988).

[38]*Haberman*, 109 Wn.2d at 140.

[39]RCW 13.40.020(14).

[40]*State v. Rice*, 98 Wn.2d 384, 393, 655 P.2d 1145 (1982); *State v. Estrella*, 115 Wn.2d 350, 357, 798 P.2d 289 (1990) (paramount purpose of RCW 9.94A, the Sentencing Reform Act of 1981, is punishment).

[41]RCW 46.20.031(1).

[42]RCW 46.20.100.

this state.[43] Again, no such restriction exists for persons who are 18 years old or older. An 18-year-old also is treated as an adult for many other purposes. For example, the following rights begin at age 18: the right to vote,[44] the right to hold office,[45] the right to independently decide to marry,[46] the right to make a will,[47] and the right to serve as a juror.[48] Furthermore, most persons 18 to 21 years old have finished high school and have a greater dependence on a driver's license for education, employment or family needs.

There are numerous distinctions between minor teenagers and persons who are between the ages of 18 and 21. Consequently, we hold there are several rational bases for the classification of *juvenile* teenagers created by the challenged legislation.

Similarly, the Legislature's creation of a class that includes juvenile *teenagers*, but does not include younger juveniles, is not wholly arbitrary. The juvenile offenders argue that because juveniles who are 12 years old are, like 13-year-old juveniles, presumed competent to commit crimes, they should be included in the class. They argue that the statutory scheme of the Juvenile Justice Act of 1977, RCW 13.40, requires such inclusion in order for the statute to be consistent.

However, the rational basis test is not whether the classification is consistent with other statutorily created classes. Rather, it is whether the legislative classification is rationally related to the goals of the legislation. While the juveniles are correct in their statement that 12-year-old chil-

[43]RCW 46.12.250.

[44]Const. art. 6, § 1.

[45]Const. art. 2, § 7.

[46]RCW 26.04.010.

[47]RCW 11.12.010.

[48]RCW 2.36.070.

dren are presumed capable of committing crimes,[49] that does not mean that other younger juveniles are incapable of committing the same crimes that subject older juveniles to revocation of driving privileges.[50] Furthermore, the Juvenile Justice Act of 1977 does not consistently treat 12-year-old children the same as it treats those who have reached their teen years.[51] Indeed, in meting out penalties, 12-year-old offenders are treated differently than teenage offenders. The sentencing scheme of the Juvenile Justice Act of 1977 bases sentences, in part, on the age of the offender.[52] Under the sentencing scheme of the Juvenile Justice Act of 1977, punishments for various offenses are based on the number of offense points earned for a specific offense. Offense points are dependent, in part, on the age of the juvenile offender.[53] Juveniles aged 12 and under are grouped together under this system.[54] Juveniles older than 12 are allocated offender points based on their age, year by year.[55]

Further, the purposes of the legislation would not clearly be served by revoking the privilege to drive of a child under the age of 13 as the impact of the penalty, postponing the child's privilege to drive until age 17, is so remote that the deterrence effect would likely be lost.

---

[49]*See* RCW 9A.04.050.

[50]The presumption that a child between the ages of 8 and 12 years is incapable of committing a crime can be overcome by proof that the child has sufficient capacity to understand the act and to know that it is wrong. RCW 9A.04.050. *See also State v. Q.D.*, 102 Wn.2d 19, 26-27, 685 P.2d 557 (1984).

[51]*Compare* RCW 13.40.050(2), requiring notice of detention hearings to be served on a juvenile "if over twelve years of age", *with* RCW 13.40.100(2), requiring a summons to be directed to the juvenile "if the juvenile is twelve or more years of age".

[52]RCW 13.40.010(2)(d). *See also* Washington State Juvenile Disposition Standards Comm'n, *Juvenile Disposition Standards Philosophy and Guide* 14 (1984) (a juvenile's age is a key factor in developing and administering sanctions).

[53]RCW 13.40.0354(3).

[54]RCW 13.40.0357 sched. C.

[55]RCW 13.40.0357 sched. C.

Thus the statutory scheme does not support a conclusion that the division between 12- and 13-year-old offenders is purely arbitrary.[56]

■ While the Legislature might have included others within the class it created by this legislation, equal protection does not require it to attack every aspect of a problem. The Legislature is free to approach a problem piecemeal and to learn from experience.[57]

We hold that the statutes here at issue are constitutionally proper against the challenges raised because they are rationally related to the legitimate objectives of promoting traffic safety and deterring illegal drinking by minor teenagers.

Affirmed.

UTTER, BRACHTENBACH, DURHAM, and SMITH, JJ., concur.

MADSEN, J. (dissenting) — Washington law prohibits any person under the age of 21 from possessing or consuming alcohol. RCW 66.44.270(2). Each and every person violating this law is subject to traditional juvenile or criminal penalties, including potential incarceration. Yet Washington's statutes single out one small group, those aged 13 through 17, for additional punishment. Members of this group automatically lose their driving privileges for a minimum of 1 year.[58] *See* RCW 46.20.265; RCW 66.44.365; RCW 13.40.265. The creation of this underinclusive class lacks any rational basis, both in excluding all those under the age of 13, and in excluding all those aged 18 through 20. Because the legisla-

---

[56] *State v. Coria*, 120 Wn.2d 156, 172, 839 P.2d 890 (1992).

[57] *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 836, 601 P.2d 936 (1979), *appeal dismissed*, 446 U.S. 979 (1980).

[58] A driver's license revocation may last even longer than 1 year. A first-time offender's license is revoked for a period of 1 year or until the offender's 17th birthday, whichever elapses later; subsequent violations lead to a 2-year revocation or until the violator's 18th birthday, whichever elapses later. *See* RCW 46.20-.265(2).

tion violates equal protection, I dissent. I also address two constitutional issues not directly raised by the parties; substantive due process and proportionality of punishment.

## I
### EQUAL PROTECTION

The Legislature's rationale for creating the enhanced penalty for 13- through 17-year-olds is as follows:

> The legislature finds that many persons under the age of eighteen unlawfully use intoxicating liquor and controlled substances. The use of these substances by juveniles can cause serious damage to their physical, mental, and emotional well-being, and in some instances results in life-long disabilities.
>
> The legislature also finds that juveniles who unlawfully use alcohol and controlled substances frequently operate motor vehicles while under the influence of and impaired by alcohol or drugs. Juveniles who use these substances often have seriously impaired judgment and motor skills and pose an unduly high risk of causing injury or death to themselves or other persons on the public highways.
>
> The legislature also finds that juveniles will be deterred from the unlawful use of alcohol and controlled substances if their driving privileges are suspended or revoked for using illegal drugs or alcohol.

Laws of 1988, ch. 148, § 1, p. 592.

This legislation, and its rationalization, gives me great concern. By limiting the loss of driving privileges only to minors aged 13 through 17, Washington's "abuse and lose" legislation triggers two distinct issues for analysis, one at each end of the classification's age range.

First, at the high end of the range, the legislation treats 17-year-olds differently than 18-year-olds. In concluding that this distinction has a rational basis, the majority refers primarily to other instances in which the Legislature already distinguishes between those under age 18 and those aged 18 through 20. Majority opinion, at 564-65.

This reasoning is rather startling. Merely because a distinction between 17-year-olds and 18-year-olds is used in some settings, such a distinction does not automatically justify it in others. The majority presents no persuasive reason why *in this particular setting* the distinction between 17-year-olds and 18-year-olds is constitutionally sound.

Instead, the analysis should examine whether the Legislature could rationally conclude that individuals aged 13 through 17 are more likely to cause harm as drunk drivers than those aged 18 through 20. How could they be? Driver's licenses cannot even be acquired until the age of 16, and instructional permits (requiring a licensed driver who has been driving for at least 5 years to ride in the passenger seat) can be acquired only a half year earlier. *See* RCW 46.20.031(1); RCW 46.20.055(1)(a). For example, a 19-year-old who drinks alcohol, and who presumably already has a driver's license, is a far greater risk for driving while drunk than is a 14-year-old, who cannot even drive a car for the next 2 years. The 19-year-old is drinking while licensed to drive, yet we cannot know that the 14-year-old will continue to drink after he or she reaches the driving age, let alone drink and drive. *Cf. State v. Barnes*, 117 Wn.2d 701, 709, 818 P.2d 1088 (1991) (discussing the unreliability involved in predicting future dangerousness).

Moreover, although the majority's quotation from a law review article shows that juveniles are involved in disproportionately high numbers of fatal traffic accidents, the quotation does not establish that this is due to the use of alcohol. The quotation's last sentence, stating that juveniles who drink have "an increased probability of traffic accidents", states very little; *any* group that drinks will have an increased probability of traffic accidents. Majority opinion, at 562.

To the contrary, a review of the authorities relied on by the majority reveals that 18- through 20-year-olds are more likely to harm the public through drunk driving than is the group targeted by the "abuse and lose" legislation. According to those authorities, only 25 percent of youth aged 12 to 17 — as opposed to 58 percent of individuals aged 18 to 20 — drink alcohol in any given month. See National Transp. Safety Bd., Safety Recommendation H-93-1 through -9, at 3 (Mar. 11, 1993). This pattern of alcohol use increases through the teen years until age 21, so that 61 percent of people aged 18 to 21 regularly drink alcohol. Safety Recommendation, at 4. Given

that the group targeted by the "abuse and lose" legislation uses alcohol less often and drives less often (see discussion above) than do 18- through 20-year-olds, I can only conclude that the targeted group represents a substantially smaller risk of harm to others through drunk driving than do individuals 18 and older. In fact, the greatest incidence of alcohol-related driving accidents is not among juvenile drivers at all, but is in the 23-year-old age group. *See Johnson v. State Hearing Examiner's Office*, 838 P.2d 158, 182 (Wyo. 1992) (Cardine, J., concurring specially).

In light of these observations, it is difficult to conceive what rational basis the Legislature would have for excluding those aged 18 and older.

Nor does the majority convincingly explain why the classification's lower limit, a person's 13th birthday, comports with equal protection. The majority looks to the legislation's deterrent effect in justifying this distinction. According to the majority, the Legislature could rationally conclude that "abuse and lose" legislation would deter 13-year-olds but not younger children. Majority opinion, at 566.

I disagree. In this state, a child is presumed incapable of committing a crime until the age of 12. *See* RCW 9A.04.050. Thus, it is the 12th birthday, not the 13th, which determines when minors acquire the mental capacity to determine their own actions and hence when they are capable of being deterred. Accordingly, even if one were to assume that *any* lower limit could be constitutionally set for this legislation, the 13th birthday would not be that proper lower bound.

The selection of the 13th birthday as a basis for distinction appears to have been wholly arbitrary. Nothing in the legislative findings explains the use of this date. In fact, the findings allege that *all* juveniles will be deterred by "abuse and lose" legislation. *See* Laws of 1988, ch. 148, § 1, p. 592. Nor have we been pointed toward any relevant research or study that reveals any basis for finding any difference in deterrence between the ages of 12 and 13.

The arbitrary nature of the legislation's lower cutoff date is heightened with the recognition that the Legislature appears to have adopted this distinction without any meaningful consideration. The "abuse and lose" legislation was initially passed by the House without any lower age limit. *See* House Bill 1482, 50th Legislature (1988). The lower age limit was later added by the Senate, and approved in the House, yet the legislative history reveals no explanation for this change, other than a desire to conform to Oregon's statute. Thus, the Legislature does not appear to have considered at all whether 13-year-olds are more susceptible to this legislation's deterrence than are younger children. I can only conclude that the setting of the lower limit was an arbitrary act in violation of equal protection.

The majority emphasizes the principle that the Legislature is not required to address every problem in its entirety. As the majority states, the Legislature "is free to approach a problem piecemeal and to learn from experience." Majority opinion, at 567 (quoting *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 601 P.2d 936 (1979), *appeal dismissed*, 446 U.S. 979, 64 L. Ed. 2d 835, 100 S. Ct. 2958 (1980)). While in many contexts I would agree with this statement, it has important limits. Were the principle to apply as broadly as it is stated here, no underinclusive legislation would ever violate equal protection; every such enactment could be upheld as a piecemeal solution. It is the court's role to examine the basis justifying such distinctions among classes of individuals. The court may well find that, as with the current legislation, the relationship between the classification and its goal is "so attenuated as to render the distinction arbitrary or irrational". *See Nordlinger v. Hahn*, ___ U.S. ___, 120 L. Ed. 2d 1, 112 S. Ct. 2326, 2332 (1992).

Accordingly, I conclude Washington's "abuse and lose" legislation violates equal protection. Since my concerns with this legislation are not limited to equal protection, I also briefly address the constitutional issues of substantive due

process and disproportionate punishment presented by this law.

## II
### SUBSTANTIVE DUE PROCESS

This legislation, even if it had not been restricted to a particular age group, would still suffer from a fundamental flaw: there is no rational basis for revoking driver's licenses based on nondriving offenses. The possession or consumption of liquor in no way requires the operation of a motor vehicle; therefore, a finding that a person possessed, or even drank from, a can of beer hardly establishes that the person is a threat as a drunk driver. In fact, many people who drink take pains not to drive while drunk. Thus, the legislation arbitrarily punishes for an offense not committed — driving while drunk.

Because this offense has no immediate connection with operating a motor vehicle, the license revocation is arbitrary and lacks the rational relationship demanded by substantive due process. *See Johnson*, 838 P.2d at 172-74. To similar effect, Washington's courts have required, both before and after the passage of the Sentencing Reform Act of 1981, a rational relationship between conditions imposed in a criminal sentence — here, the license revocation — and the underlying crime. *See State v. Riley*, 121 Wn.2d 22, 36-38, 846 P.2d 1365 (1993); *State v. Eilts*, 94 Wn.2d 489, 494, 617 P.2d 993 (1980) (restitution, as a condition of probation, must be related to the crime being charged). "[T]he mere fact that drinking is associated with driving in the abstract will not suffice to supply the requisite rationality." *Johnson*, 838 P.2d at 174 (quoting from *Commonwealth v. Strunk*, 400 Pa. Super. 25, 41, 582 A.2d 1326, 1334 (1990) (Popovich, J., dissenting), *appeal denied*, 528 Pa. 630 (1991)).

The Legislature's rationalization quoted above, especially its third paragraph, reveals that the Legislature's true aim here is not deterrence of drunk driving, but deterrence of drinking in and of itself.[59] This being the case, the Legislature

---

[59]The majority of the group being singled out cannot possess a driver's license. Thus, the Legislature's inclusion of the second paragraph, postulating that

might just as easily have used the threat of revoking driver's licenses to deter other nondriving offenses, such as shoplifting, juvenile vandalism, loitering, or even the commission of sexual offenses. *See Johnson*, 838 P.2d at 172-74; *People v. Lindner*, 127 Ill. 2d 174, 176, 535 N.E.2d 829 (1989) (statute revoking driver's licenses for commission of sexual offenses is arbitrary and violates due process); *Strunk*, 400 Pa. Super. at 41-43. The problems involved in pursuing this "deterrence" approach have been well summarized elsewhere:

> The test of "rational relationship" as defined by the "deterrence" rationale is not logically cabined solely to the offense of underage drinking or offenses committed by minors. Consider a legislature desirous of deterring juvenile vandalism. Under today's rationale, and owing to the intractable nature of juvenile deterrence, the legislature might rationally consider suspension of operator's privileges as an effective deterrent. Following like reasoning, the legislature might penalize public drunkenness or disorderly conduct or loitering with suspension of operator's privileges. To be sure, these are but a few examples. Troublesome with the "deterrence" rationale is that its limits are largely defined by the ingenuity of legislators, not by the test of rationale relationship under the substantive component to the Due Process Clause.

*Strunk*, 400 Pa. Super. at 43 n.3 (Popovich, J., dissenting).

## III
### DISPROPORTIONATE PUNISHMENT

"Abuse and lose" legislation involves double punishment since an offender faces traditional criminal sanctions as well as revocation of driving privileges. The nature and extent of this punishment raises issues of proportionality under the eighth amendment to the United States Constitution. Similar legislation in another state has already been overturned on this basis. *See Johnson*, 838 P.2d at 177-78. Revocation of driver's licenses causes extended, long-term consequences to young drivers that exceed the simple loss of a license. For one thing, the legislation often sets up a juvenile for repeated, self-perpetuating run-ins with the law, for many young people will drive even without a license. District and municipal courts

---

juvenile drinkers might also drive after drinking, appears to have been merely an afterthought and an attempt to legitimize an otherwise arbitrary penalty.

throughout the state devote a large percentage of court time to hearing license cases. Many of these cases involve young people who would have no contact with the criminal justice system but for the deep holes into which they have dug themselves through licensing problems.

The difficulty for young people is further exacerbated by the significant increases in the cost of automobile insurance once the driver requalifies for a license. *See Johnson*, 838 P.2d at 166. The financial obstacles most significantly impact young people from families on the lower end of the economic spectrum. *See Johnson*, 838 P.2d at 166.

Because this legislation violates equal protection, I dissent.

GUY, J., concurs with MADSEN, J.