IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39502-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THELMA WINGER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Thelma Winger appeals her judgment and sentence, imposed as a result of her convictions for first and second degree animal cruelty. Finding no error, we affirm.

## FACTS

After receiving reports of suspected animal mistreatment, law enforcement searched a rural property owned by Paul and Thelma Winger on April 29, 2018. The search revealed several animals that were emaciated and malnourished. Pens and

kennels were soaked in urine and caked in feces. Many of the animals had protruding bones and open sores. The Wingers claimed they were experiencing financial difficulties. However, there was dog food at the residence, including some unopened bags. One of the investigating officers described the scene as one of worst cases of animal mistreatment they had ever witnessed.

Officers seized several of the animals and transferred them to the custody of animal rescue organizations. Veterinarians considered the possibility of euthanasia, but opted instead to provide medically necessary treatment.

The State separately charged the Wingers with six counts of first degree animal cruelty as to a horse, three dogs, a cat, and a bird. The Wingers were also charged with second degree animal cruelty against some turtles and doves. Each of the first degree charges alleged that

> on or about April 29, 2018, [the defendant] did, with criminal negligence, starve, dehydrate, or suffocate an animal . . . and as a result caused death or substantial and unjustifiable physical pain that extended for a period sufficient to cause considerable suffering; contrary to RCW 16.52.205 . . . .

Clerk's Papers (CP) at 11-13. The Wingers waived their rights to a jury trial and their cases were jointly tried to the bench.

At trial, the court heard testimony from treating veterinarians who testified the animals were gravely emaciated. The veterinarians opined that the animals' conditions

were the result of a lengthy and extremely painful period of deprivation of adequate calories. Animal rescue professionals testified that the rescued animals readily ate and recovered—continually gaining weight—as soon as they were provided proper nutrition.

One of the animal rescue volunteers who testified at trial was an individual named Jo Ridlon. Ms. Ridlon explained that she first became aware of possible mistreatment of the Wingers' animals when she received reports from community members, including George Blush, who apparently runs a pet food bank. Ms. Ridlon testified that she and Mr. Blush spoke to Paul Winger by phone a few days prior to the animals' rescue. Ms. Ridlon testified that she told Mr. Winger that her organization would help bring a veterinarian to the Wingers' property if the Wingers did not want to take their horse to a vet, but that the Wingers "refused" to schedule a vet appointment. 1 Rep. of Proc. (RP) (May 19, 2021) at 183-84.

On cross-examination, Ms. Winger's counsel asked Ms. Ridlon how she could remember the specifics of this interaction that happened more than three years prior:

> [DEFENSE COUNSEL]: . . . [Y]ou don't have any record of [the phone conversation], correct?
> [MS. RIDLON]: It's kind of memorialized in an email.
> [DEFENSE COUNSEL]: Between who?
> [MS. RIDLON]: Me and Chief [Ryan] Spurling [of the Mason County Sheriff's Office].
> . . . .
> [DEFENSE COUNSEL]: . . . [H]ow do you know there's an email?

[MS. RIDLON]: Because I wrote it.

*Id.* at 185.

The existence of an e-mail came as a surprise to both parties. The prosecutor thereafter obtained copies of the relevant e-mail correspondence and produced them to the defense.

The defense raised a *Brady*[1] challenge and moved to dismiss the charges. The defense argued that the State had failed to disclose the e-mails for more than three years, and that one sentence in one of the e-mails was exculpatory because it showed the Wingers had obtained food for their animals. The sentence in question is written by Ms. Ridlon and reads: "George [Blush] said when *he delivered dog food to* [*the Wingers*] there were several things that didn't seem right but he didn't say anything." Ex. 3 at 1 (emphasis added); *see also* 1 RP (May 20, 2021) at 192.

Defense counsel explained they had learned from their clients that Mr. Blush had delivered them dog food, and that counsel had thus tried to interview Mr. Blush, who was hostile and refused to voluntarily participate. Defense counsel claimed that, if they had known there was independent evidence that Mr. Blush delivered dog food, the case would have been "a very different ballgame." 1 RP (May 20, 2021) at 212. The prosecutor

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

disagreed, pointing out that "[t]he defense was on notice that food was provided to these animals," *id*. at 218, and noting that defense counsel was still free to interview Mr. Blush and subpoena him for a deposition if he proved uncooperative. *Id.* at 220.

The trial court continued the proceedings and entered an order requiring the State to search for more e-mails at the sheriff's office relating to the Winger case. Although the defense speculated that there were more Ridlon/Spurling e-mails than the ones disclosed, the search of sheriff's office records revealed no additional e-mails. The State acknowledged that, as a matter of policy, county government e-mails were ordinarily retained for only two years, so any e-mails about the Winger case were likely deleted as a matter of course.

The State also informed the trial court that the e-mail "which [defense] counsel is basing their argument on"—that is, the one containing the purportedly exculpatory sentence—was "from and to the same individual." 1 Supp. Rep. of Proc. (June 28, 2021) at 5. An examination of exhibit 3 confirms this: the e-mail that the Wingers alleged was exculpatory was both sent *and* received by Ms. Ridlon's e-mail address. It appears from the exhibit that Ms. Ridlon may have inadvertently replied to herself, because the most recent e-mail in the chain was an e-mail from her to Chief Spurling (stating, "Sorry phone is on 1% I'll be more informative when home."). Ex. 3 at 2. The trial court rejected the

Wingers' *Brady* challenge, basing its denial on the Wingers' failure to show that the e-mail in question was in fact ever received by Chief Spurling.

After the State rested, the court dismissed the first degree charge as to the bird at the State's request. The court also granted the Wingers' motion to dismiss the second degree charges as to the turtles and the doves, concluding the State had presented no evidence those animals were in pain.

The Wingers also moved to dismiss the first degree charge related to the cat. Counsel argued that the State had not proven the cat's condition was not caused by an underlying medical problem. Defense counsel agreed that there was a "prima facie" case of second degree animal cruelty as to the cat and that an amended charge would be "appropriate." 2 RP (Aug. 5, 2021) at 574-75, 577-79. The trial court agreed with defense counsel's assessment and amended the charge pertaining to the cat to animal cruelty in the second degree.

The court convicted the Wingers of four counts of first degree animal cruelty as to the three dogs and the horse, and one count of second degree animal cruelty as to the cat. Ms. Winger was sentenced to 45 days of confinement, 30 days of which were converted to 240 hours of community service. The trial court also forbade Ms. Winger from ever

owning, possessing, caring for, or cohabitating with animals and ordered her to pay

$6,963.09 in total restitution to the organizations that cared for the animals she neglected.

Ms. Winger filed a timely notice of appeal. A Division Three panel considered

Ms. Winger's appeal without oral argument after receiving an administrative transfer of

the case from Division Two.

ANALYSIS

Ms. Winger raises several challenges to her conviction and sentence. We address

each in turn.

*Sufficiency of charging document*

Ms. Winger's first contention pertains to the sufficiency of the State's charging

document. She claims the first degree animal cruelty charges failed to allege facts

sufficient to support all elements of the offense.

We review the adequacy of a charging document de novo. *State v. Canela*, 199

Wn.2d 321, 328, 505 P.3d 1166 (2022). Criminal defendants are entitled to be informed

of the nature and cause of the accusations against them. *See id.* (citing U.S. CONST.

amend. VI; WASH. CONST. art. I, § 22; CrR 2.1. Where, as here, a charging document is

challenged for the first time on appeal, we liberally construe it in favor of validity. *State v.*

*Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). Under this liberal standard we first

assess whether the necessary elements of the charged offense "appear in any form or by fair construction can be found" in the charging document. *State v. Chambers*, 23 Wn. App. 2d 917, 924, 518 P.3d 649 (2022), *review denied*, 200 Wn.2d 1030, 523 P.3d 1179 (2023). If this initial hurdle is met, we will reject the defendant's challenge unless the defendant can show actual prejudice. *See id.*

The information accused Ms. Winger of first degree animal cruelty under former RCW 16.52.205(2) (2015), which provides:

> A person is guilty of animal cruelty in the first degree when . . . he or she, with criminal negligence, starves, dehydrates, or suffocates an animal and as a result causes . . . [s]ubstantial and unjustifiable physical pain that extends for a period sufficient to cause considerable suffering . . . .

Ms. Winger contends her charging document was inadequate because it specified that negligent acts occurred on a single day, April 29, 2018. She argues that this limited time period is insufficient to support an allegation of physical suffering over an extended period of time, as required by the statute.

Ms. Winger's criticism is unpersuasive. The charging document did say that Ms. Winger's conduct occurred "on or about April 29, 2018." CP at 11-13. But it also contained the statutory language that the harm to the animals in Ms. Winger's care "extended for a period sufficient to cause considerable suffering." *Id.*; *see* former RCW 16.52.205(2); *see also Chambers*, 23 Wn. App. 2d at 925 (approving an

information that "used the verbatim language of the statutes"). Read as a whole, the charging document adequately alleged Ms. Winger's conduct occurred over an extended period of time, to include on or about April 29, 2018. *See State v. Hayes*, 81 Wn. App. 425, 432, 914 P.2d 788 (1996) (noting the phrase "'on or about' is sufficient to admit proof of the act at any time within the statute of limitations, so long as there is no defense of alibi"). This was sufficient to convey the essential elements of the offense.

Ms. Winger asserts she was prejudiced by the wording of the charging document, but she fails to substantiate this claim. Nothing in the record suggests that Ms. Winger was confused about the nature of the charges or that she limited her defense strategy based on the information's wording. *See State v. Derri*, 199 Wn.2d 658, 691, 511 P.3d 1267 (2022) (noting when a charging document conveys the essential elements of an offense, the conviction will not be reversed in the absence of actual prejudice). Ms. Winger's unpreserved challenge to the sufficiency of the State's charging document fails.

*Trial court's oral amendment of information*

Ms. Winger contends her second degree animal cruelty conviction as to the cat was also unlawful, claiming the trial court sua sponte downgraded the charge from first degree to second degree. This complaint misrepresents the record. The trial court downgraded this charge at Ms. Winger's invitation. Furthermore, the amendment was appropriate

given the only change was to an inferior degree crime. *State v. Peterson*, 133 Wn.2d 885, 893, 948 P.2d 381 (1997). This challenge fails.

*Sufficiency of evidence*

Ms. Winger's third claim is that the record contains insufficient evidence of first degree animal cruelty's essential durational element: that Ms. Winger negligently caused substantial pain "extend[ing]" for a sufficient time period. Former RCW 16.52.205(2). She argues that the trial court's factual findings impermissibly relied on evidence outside the charging period, which she claims is limited to April 29, 2018.

For the reasons previously stated, the charging document did not limit Ms. Winger's offense conduct to only April 29, 2018. *See State v. Brooks*, 195 Wn.2d 91, 100-01, 455 P.3d 1151 (2020). Ms. Winger's sufficiency challenge therefore fails.

*Failure to disclose exculpatory evidence*

Ms. Winger next argues her case should have been dismissed because the State breached its duty to disclose exculpatory evidence when it did not turn over Jo Ridlon's e-mails. The law clearly requires the State to disclose evidence favorable to the defense. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). But Ms. Winger fails to show the State violated this obligation.

As an initial matter, we agree with the trial court that the State did not violate its duty to disclose exculpatory evidence because the Ridlon e-mail was never in the State's possession until after it came to light during Ms. Ridlon's trial testimony. Ms. Ridlon's copy of the e-mail indicates she sent it to herself, not Chief Spurling. The State does not violate its duty to turn over exculpatory evidence if it never possessed the evidence in the first place. *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011) ("'[T]he prosecution is under no obligation to turn over materials not under its control.'" (quoting *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991))).

Nor was the evidence in question exculpatory. The fact that the Wingers had access to dog food and still allowed their animals to become malnourished is indicative of criminal negligence. It is not exculpatory. Nothing about the information contained in Ms. Ridlon's e-mail tends to detract from the weight of the State's case.

Ms. Winger suggests that the e-mail would have impeached Ms. Ridlon's testimony. This mischaracterizes the record. Ms. Ridlon testified that the Wingers refused to accept veterinary treatment for their horse. She never testified the Wingers refused to accept food for their dogs. Moreover, at most, the Ridlon e-mail revealed there was, at one point, dog food delivered to the Wingers' home. The State itself had already furnished evidence of multiple bags of dog food that had been found at the Winger

residence. *See In re Pers. Restraint of Mulamba*, 199 Wn.2d 488, 503, 508 P.3d 645

(2022) (noting evidence is immaterial under *Brady* if it "can be considered cumulative of

other trial evidence").

*Cumulative error*

Ms. Winger argues that cumulative error deprived her of a fair trial. "The

cumulative error doctrine applies when a combination of trial errors denies the defendant

a fair trial, even if any one of those errors individually may not justify reversal." *State v.*

*Restvedt*, __ Wn. App. 2d __, 527 P.3d 171, 185 (2023). Ms. Winger has not demonstrated

any individual errors at her trial. The cumulative error doctrine therefore is not grounds for

relief.

*Cruel punishment*

As part of its criminal sentence, the trial court imposed a lifetime ban on dog and

horse possession based on former RCW 16.52.200(4)(b) (2016), and further ordered that

Ms. Winger not "harbor or own" any animal "or reside in any household where animals

are present" based on former RCW 16.52.205(5)(a) (2016). *See* CP at 79. Former RCW

16.52.200(4)(b) required trial courts to impose a lifetime ban on ownership of "similar"[2]

---

[2] The legislature defined "similar animal" as, for mammals, any animal in the same taxonomic order; and for nonmammals, any animal in the same taxonomic class. *See* former RCW 16.52.011(2)(q) (2017).

animals based on a conviction for first degree animal cruelty and former

RCW 16.52.205(5)(a) provided discretion to impose a lifetime ban on the ownership

of *any* animals.[3] Ms. Winger contends her lifetime ban on animal possession is

unconstitutionally cruel.[4] She therefore claims this portion of her judgment and sentence

must be stricken.

We review the constitutionality of a punishment de novo. *State v. Bassett*, 192

Wn.2d 67, 77, 428 P.3d 343 (2018). The United States Constitution forbids "cruel and

unusual punishments." U.S. CONST. amend. VIII. The Washington Constitution similarly

forbids "cruel punishment[s]." WASH. CONST. art. I, § 14. Because the state constitutional

---

[3] The legislature amended former RCW 16.52.200(4)(b), effective June 11, 2020, to delete the word "similar." *See* LAWS OF 2020, ch. 158, § 5. The present statute now requires trial courts to impose a lifetime ban on *any* animal ownership when a person is convicted of first degree animal cruelty. *See also* RCW 16.52.205(5) ("[T]he court must order that the convicted person not own, care for, possess, or reside in any household where an animal is present."). LAWS OF 2020, ch. 158, § 6. Ms. Winger's offense conduct preceded these statutory amendments.

[4] Ms. Winger also argues that the forced forfeiture of her animals constituted an unconstitutional punishment, but her briefing mainly focuses on the lifetime ban on animal ownership. Former RCW 16.52.085(1) and (4) (2016) authorized the seizure of the animals Ms. Winger was charged with abusing. The details of the forfeiture of her other animals are not evident from the record. *See State v. Stevenson*, 16 Wn. App. 341, 345, 555 P.2d 1004 (1976) ("Matters referred to in the brief but not included in the record cannot be considered on appeal."). In any event, because we conclude Ms. Winger's lifetime ban on animal ownership was constitutional, we necessarily also conclude that the forced forfeiture of her animals was constitutional, because a forfeiture of her animals was logically necessary to effectuate the lifetime ban.

text is more protective than that of the Eighth Amendment to the United States

Constitution, if a sentence is not cruel under the Washington Constitution, "it is

necessarily not cruel and unusual under the Eighth Amendment." *State v. Moretti*,

193 Wn.2d 809, 820, 446 P.3d 609 (2019); *see also Bassett*, 192 Wn.2d at 78, 80, 82.

Ms. Winger argues the lifetime ban on animal ownership is categorically

unconstitutional or that, alternatively, it is disproportionate under the four factors

elucidated in *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980).

A categorical analysis is not applicable to Ms. Winger's case. A claim that a

sentence is categorically unconstitutional focuses on "the nature of the offense or the

characteristics of the offender." *Bassett*, 192 Wn.2d at 84. There are no distinctive

characteristics shared by all animal owners nor by all animal cruelty offenses. We are

"free to choose the most appropriate framework" for an individual case, and here a

categorical-bar analysis is inapposite. *Id.* at 83.

Apart from the categorical analysis, a punishment may be unconstitutionally

cruel if it is grossly disproportionate to the crime of conviction. *See id.* at 82-23. In

*Fain*, our Supreme Court adopted four factors to determine whether a punishment is

unconstitutionally disproportionate: (1) the nature of the offense; (2) the legislative

purpose behind the statute; (3) the punishment the defendant would have received in other

jurisdictions for the same offense; and (4) the punishment meted out for other offenses in Washington. 94 Wn.2d at 397. We address each of the relevant factors in turn.

### 1. Nature of the offense

The first *Fain* factor analyzes the severity of the offense and the facts of the defendant's case. *See State v. Morin*, 100 Wn. App. 25, 30-31, 995 P.3d 113 (2000). This factor may weigh against constitutionality where the defendant's crimes were "relatively minor," that is, where they did not "threaten violence to persons or property." *Fain*, 94 Wn.2d at 398.

Ms. Winger's crimes are not minor. The State's witnesses testified that the Wingers' mistreatment of their animals was horrendous. Contrary to Ms. Winger's protestations, her failure to provide for her animals was not solely attributable to her poverty. A person who, as a result of poverty, cannot afford food for their animals, has other options besides simply letting the animals go hungry. There was evidence at trial that the Wingers were offered veterinary care and that there were organizations able to provide food. Yet the Wingers still let their animals starve to the brink of death. The first *Fain* factor is not indicative of disproportionality here.

## 2. Legislative purpose

The second *Fain* factor looks to legislative purpose. The legislature added the possibility of lifetime bans on animal ownership to the animal cruelty statutory scheme in 2009. *See* LAWS OF 2008, ch. 287. At the time, the Senate Bill Report on the proposed statutory change explained:

> People are allowed to mistreat animals time and again because the penalties involved are *not severe enough*. Right now, those who are convicted of killing or severely abusing animals are only prohibited from owning a like animal for a period of two years. Current law does not prohibit these offenders from owning other animals even though *they are likely to mistreat them as well*. . . . Many other states have already passed *more stringent* penalties for animal mistreatment and *Washington should follow suit.*

S.B. REP. ON SUBSTITUTE S.B. 5402, 61st Leg., Reg. Sess. (Wash. 2009) (emphasis added). Ms. Winger contends that this passage reveals the legislature intended for its strictest punishments to reach only repeat offenders. She misreads that passage. The Senate Bill Report reveals an intent to quell the possibility of recidivism by making lifetime bans on animal ownership possible.

Moreover, although she was sentenced under the former statute, since the commission of Ms. Winger's crimes the legislature made a lifetime ban on animal ownership *mandatory* for first degree animal cruelty rather than permissive. *See* LAWS OF 2020, ch. 158, §§ 5-6. Thus, legislative history, as well as the former statute's very text,

16

evidences the legislature's ongoing intent to expand protection of animals by imposing increasingly strict punishments on offenders. This factor does not suggest disproportionality.

### 3. Punishment in other jurisdictions

The third *Fain* factor requires this court to analyze what punishment Ms. Winger would have received in other jurisdictions for the same offenses. To analyze this factor, we do not need to conduct "an exhaustive analysis of laws in other jurisdictions" if it can be established that Washington's law is at least "similar" to legislation throughout the country. *Morin*, 100 Wn. App. at 31-32. Moreover, because a person "could have received" a different "sentence in another jurisdiction, that fact alone is not dispositive." *State v. Reynolds*, 21 Wn. App. 2d 179, 199, 505 P.3d 1174 (2022).

Ms. Winger contends that RCW 16.52.200(4)(b), making a lifetime ban on any animal ownership mandatory for a first degree animal cruelty conviction, is the harshest law in the country. But Ms. Winger was not sentenced under the present statute. Thus, the present statute's constitutionality is not properly before this court, and we need not reach that question. The sentencing prohibition on Ms. Winger owning any animals was instead made under former RCW 16.52.205(5)(a), which gave the trial court discretion to impose such a lifetime ban.

17

Former RCW 16.52.205(5)(a) is similar to legislation in other states. For example:

- In Colorado, in the event of a conviction for felony animal cruelty, trial courts must enter an order prohibiting the defendant from owning a pet animal for a period of three to five years unless a treatment provider specifically recommends against such a prohibition and the court agrees with the provider's assessment. Colo. Rev. Stat. § 18-9-202(a.5)(V.5).

- In Alaska, trial court judges have discretion to prohibit a defendant from owning animals for up to 10 years in the event of a felony or misdemeanor conviction for animal cruelty. Alaska Stat. § 11.61.140(g)(3), (h)(3).

- In Oregon, for various animal cruelty offenses, judges are required to impose a 5-year or 15-year prohibition of ownership of animals in the same genus as the abused animal. Or. Rev. Stat. § 167.332(1)(a)-(b).

- Maine allows lifetime bans. In Maine, trial courts are authorized to prohibit individuals convicted of a specific class of animal cruelty offense from owning animals "for a period of time that the court determines to be reasonable, *up to and including permanent relinquishment*." Me. Stat. tit. 17, § 1031.(3-B)(D)(1) (emphasis added). For another class of offense, Maine trial courts are required to impose such a prohibition, "up to and including permanent relinquishment."

Me. Stat. tit. 17, § 1031(3-B)(D)(2). And trial courts are permitted to "impose any

other reasonable restrictions on a defendant's future ownership or custody of an

animal as determined by the court to be necessary for the protection of animals."

Me. Stat. tit. 17, § 1031(3-B)(D)(3).

- Virginia ostensibly allows lifetime bans. In Virginia, "[a]ny person convicted of

  [animal cruelty] may be prohibited . . . from . . . ownership of companion animals."

  Va. Code Ann. § 3.2-6570(G).

- In Delaware, "[a]ny person convicted of [felony animal cruelty] shall be prohibited

  from owning or possessing any animal for 15 years after said conviction, except

  for" animals raised for resale. Del. Code Ann. tit. 11, § 1325(d).

- Illinois ostensibly allows lifetime bans. In Illinois, trial courts "may order that the

  convicted person . . . may not own . . . any other animals *for a period of time that*

  *the court deems reasonable*." 510 Ill. Comp. Stat. 70/3.04(c) (emphasis added).

Although other states' legislation may not precisely track Washington's, former

RCW 16.52.205(5)(a) is at the very least not dissimilar to the norm in several other states.

And at least a handful of states—such as Maine, Virginia, and Illinois, listed above—

apparently allow trial courts discretion to impose a lifetime ban. And Ms. Winger was

punished under such a discretionary statute, not the present mandatory statute. The former

statute under which Ms. Winger was punished is not far outside the mainstream under national norms.

### 4. Punishment in Washington for other offenses

The final *Fain* factor asks this court to compare Ms. Winger's punishment to punishments for other offenses in Washington.

It is not unusual in Washington for a convicted person to lose privileges as a result of their criminal activity. For instance, Washington revokes driver's licenses for vehicle-related offenses that do not necessarily involve any harm to persons or property. *See* RCW 46.65.020; *cf. State v. Clifford*, 57 Wn. App. 127, 129-30, 787 P.2d 571 (1990) (driving is a privilege, not a right). Such revocations do not raise constitutional concerns even though, for many people, the ability to operate a motor vehicle is essential to their participation in society.

Ms. Winger contends her punishment is severe compared to others in Washington because, under the statutory scheme, there is no chance for her to ever restore her ability to own animals. *See* RCW 16.52.200(5) (allowing convicted individuals to petition for restoration of their legal ability to own animals, but only if their convictions are in the second degree). She attempts to compare the prohibition on animal ownership to prohibitions on firearm ownership. Ms. Winger notes that, except for those convicted of

the most severe crimes, convicted individuals are able to petition for restoration of the right to own guns after a few years. *See* RCW 9.41.040(1)(a), (4)(a); *State v. Swanson*, 116 Wn. App. 67, 70-71 & n.2, 76, 65 P.3d 343 (2003). She notes this is a contrast to her situation, where restoration will never be an option, and argues this supports a conclusion that her punishment is unconstitutionally cruel.

Ms. Winger's comparison to gun ownership undermines her argument. Gun ownership is constitutionally protected. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, __ U.S. __, 142 S. Ct. 2111, 2135, 213 L. Ed. 2d 387 (2022). Pet ownership is not. Despite its constitutional protection, gun ownership can, at times, be restricted based on compelling interests. *See District of Columbia v. Heller*, 554 U.S. 570, 595, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). If a government can constitutionally forbid convicted individuals from owning guns—a specifically enumerated constitutional right—it can certainly limit convicted individuals' ability to own animals, which gets no mention in constitutional text.

None of the applicable factors support a conclusion that the ban on ownership of animals is grossly disproportionate to Ms. Winger's crimes. The punishment therefore survives constitutional scrutiny.

*Restitution*

RCW 16.52.200(6) requires an individual convicted of animal cruelty "be liable for reasonable costs incurred . . . by law enforcement agencies, animal care and control agencies, or authorized private or public entities involved with the care of the animals." The provision goes on to define "reasonable costs" to include "expenses of . . . the animal's care, euthanization, or adoption." RCW 16.52.200(6). Here, the trial court awarded restitution to two organizations that cared for the animals after the animals were taken from the Wingers' property.

Ms. Winger challenges the restitution award. She does not dispute the trial court had a legal basis for imposing restitution. She also does not claim the amounts awarded were inaccurate. Instead, she claims the restitution amount was unreasonably high because it exceeded the cost of euthanization.

We review a trial court's restitution order for abuse of discretion. *State v. Deskins*, 180 Wn.2d 68, 77, 322 P.3d 780 (2014). A trial court's decision is an abuse of discretion when it is based on untenable grounds or untenable reasons, or is otherwise manifestly unreasonable. *Id*. Ms. Winger's challenge falls far short of meeting this standard.

The restitution statute at issue plainly states a convicted individual may be held responsible for reasonable costs associated with "the animal's care, euthanization, *or*

adoption." RCW 16.52.200(6) (emphasis added). It does not limit a defendant's obligations to the least expensive of these options. In cases of extreme abuse or neglect, requiring months or years of rehabilitation, euthanasia will often be less expensive than providing medical care. Nevertheless, the statute allows care providers to make an appropriate decision based on an animal's medical needs, not cost. When it is medically appropriate to provide care, a convicted person is liable for this expense. The trial court did not abuse its discretion in awarding restitution.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Ms. Winger filed a pro se statement of additional grounds for review (SAG), raising what appear to be five points. Three of Ms. Winger's grounds appear to be based on facts outside the record. These include a claim of ineffective assistance of counsel based on counsel's alleged failure to introduce veterinary records; a claim that prosecutorial delay caused the unavailability of an expert witness; and allegations of professional misconduct by one of the State's veterinarians. We cannot review facts outside the record of this direct appeal. Ms. Winger's recourse for these claims is to file a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Ms. Winger also appears to request that we address arguments raised in a brief filed in the Division Two case of *State v. Shoop*, 22 Wn. App. 2d 242, 510 P.3d 1042 (2022). Ms. Winger does not explain why her case is analogous to *Shoop* or what aspects of the *Shoop* case are pertinent to her appeal. Division Two rejected all of Mr. Shoop's arguments in a partially published opinion. *See Shoop*, 22 Wn. App. 2d at 245-46. The Supreme Court subsequently affirmed Division Two's decision. *See State v. Shoop*, No. 101196-2 (Wash. May 4, 2023), https://www.courts.wa.gov/opinions/pdf/ 1011962.pdf. We decline to dig through the *Shoop* appellate brief in order to discern why this already-rejected argument might apply to Ms. Winger's case. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). This ground for relief fails as inadequately raised.

Finally, Ms. Winger attached a document to her SAG entitled "Issues with Animal Cruelty Cases & Specifically Mason [County] Sheriff's Dept." SAG at 3-10. Simply attaching this document is insufficient to "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). We therefore decline to address the attached document.

24

CONCLUSION

The judgment and sentence are affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Staab, J.

25