**FILED**
**MAY 29, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | |
| | ) | No. 39762-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARTURO PINEDA-FELICIANO | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — At 16 years old, Arturo Pineda-Feliciano shot and killed Felipe Garza, Sr. The adult criminal court retained jurisdiction over the case pursuant to RCW 13.04.030(1)(e)(v) because Mr. Pineda-Feliciano was 16 years old and charged with second degree murder. Mr. Pineda-Feliciano later pleaded guilty to second degree felony murder and was sentenced to 200 months of incarceration.

Mr. Pineda-Feliciano appeals arguing RCW 13.04.030(1)(e)(v) violates due process and equal protection because a portion of the statute allows juvenile defendants to waive mandatory adult court jurisdiction upon agreement by the parties and the court.

He also contends the court did not adequately consider his youthfulness when it imposed his sentence and improperly ordered the victim penalty assessment (VPA). Mr. Pineda-Feliciano raises an additional issue in a statement of additional grounds for review (SAG). We disagree with Mr. Pineda-Feliciano's first two arguments and the issue raised in his SAG but remand for the limited purpose of striking the VPA.

## BACKGROUND

On June 26, 2022, Mr. Garza, Sr., was outside of a residence in Othello, Washington, with his son, Felipe Garza, Jr., and his nephew, Apolinar Garza-Lopez. Arturo Pineda-Feliciano, who was then 16 years old, and his brother walked by, flashing "gang signs" for their affiliated gang, the East Side Longos. Clerk's Papers (CP) at 2, 133. In response, Mr. Garza-Lopez began following Mr. Pineda-Feliciano and his brother, asking them, "Where the f[]k you guys going?" CP at 133. Mr. Lopez, Sr., followed behind Mr. Garza-Lopez and asked the youths, "Where are you going fool?" and "Hey, why you guys running, homie?" *Id*.

Surveillance video showed Mr. Lopez, Sr., apparently running after Mr. Pineda-Feliciano and his brother with a belt in his hands. Mr. Pineda-Feliciano then produced a firearm and shot Mr. Lopez, Sr., in the back as he was running away from Mr. Pineda-Feliciano. Mr. Lopez, Sr., later died from his injuries. Mr. Lopez, Jr., witnessed his father's murder and later identified Mr. Pineda-Feliciano as the shooter.

Mr. Pineda-Feliciano was charged with murder in the second degree by amended information. He later pleaded guilty to the charge. The standard range sentence for Mr. Pineda-Feliciano's conviction was 144-244 months. The State recommended that the court impose 244 months while Mr. Pineda-Feliciano argued for an exceptional sentence downward of 118 months. The State's and Mr. Pineda-Feliciano's sentencing memoranda recognized that the court had the discretion to impose a sentence below the standard range because Mr. Pineda-Feliciano was a juvenile. The State and defense counsel also stipulated that the facts contained in the memoranda were accurate.

The sentencing court recognized it had to "evaluate on the record those factors of a respondent's youthfulness, which may have impacted his criminality. And, thus, weigh those factors in fashioning the appropriate [sentence]." Rep. of Proc. (RP) at 29. The court took the fact that the victim was shot "in the back while he was running away" into consideration, noting, "[t]hat is deplorable." RP at 43. The court also noted Mr. Pineda-Feliciano recorded a music video after the shooting in which he "promoted his gang and flashed his firearm," and said, "ha ha ha, that n[]er should have never started running if he didn't want it in the back."[1] RP at 43-44. The court also stated Mr. Pineda-Feliciano had been before the court numerous times,[2] and "every time I have seen him, he has been

---

[1] It is unclear if this statement came from a music video or was authored for social media. The media containing the statement does not appear to be part of the record.

[2] Mr. Pineda-Feliciano had prior juvenile convictions for felony bail jumping,

completely and totally, seemingly, honest with the Court and stated his intention to reform his life, his circle of friends, and get his education. He has never done so." RP at 44. The court further recognized Mr. Pineda-Feliciano was not abused or traumatized during his childhood and that he was of average intelligence.

Ultimately, the court recognized Mr. Pineda-Feliciano's youth, but stated, "I can't bring myself to see any mitigating factors, given all of the previous chances he's had." RP at 45. The court sentenced Mr. Pineda-Feliciano to 200 months and imposed "[m]andatory legal financial obligations" including the VPA. RP at 45; CP at 147.

Mr. Pineda-Feliciano timely appeals.

ANALYSIS

EQUAL PROTECTION AND DUE PROCESS

Mr. Pineda-Feliciano argues RCW 13.04.030 violates equal protection and due process. We disagree.

We review the constitutionality of a statute de novo. *State v. Jorgenson*, 179 Wn.2d 145, 150, 312 P.3d 960 (2013). "The party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional beyond a reasonable

---

second degree attempted assault with a deadly weapon, unlawful imprisonment, and two convictions for second degree taking of a motor vehicle without permission.

doubt." *State v. Watkins*, 191 Wn.2d 530, 535, 423 P.3d 830 (2018). Whenever possible, this court will construe a statute to render it constitutional. *Jorgenson*, 179 Wn.2d at 150.

RCW 13.04.030 states, in relevant part:

> (1) Except as provided in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings
> . . . .
>
> (e) . . . unless:
> . . . .
>
> (v) The juvenile is 16 or 17 years old on the date the alleged offense is committed and the alleged offense is:
>
> (A) A serious violent offense as defined in RCW 9.94A.030;
> . . . .
>
> (I) In such a case the adult criminal court shall have exclusive original jurisdiction, except as provided in (e)(v)(C)(II) and (III) of this subsection.

Murder in the second degree is a serious violent offense. RCW 9.94A.030(46)(a)(iii). RCW 13.04.030(1)(e)(C)(III) further provides, "The prosecutor and respondent may agree to juvenile court jurisdiction and waive application of exclusive adult criminal jurisdiction in (e)(v)(A) through (C) of this subsection and remove the proceeding back to juvenile court with the court's approval."

Mr. Pineda-Feliciano argues RCW 13.04.030(1)(e)(v) violates equal protection because a subsection of the statute allows a juvenile to waive application of exclusive adult criminal court jurisdiction upon agreement by the court, prosecutor, and defendant. He also argues the statute violates due process because it does not require a hearing be

held on whether removal to juvenile court is warranted. The State responds the statute does not violate equal protection or due process and that we should decline to address the issue because our Supreme Court has already held it does not violate the constitution. Thus, the State argues there is no constitutional issue warranting review.

As a preliminary matter, Mr. Pineda-Feliciano did not raise these issues before the trial court. Under RAP 2.5(a), this court may "refuse to review any claim of error which was not raised in the trial court." However, a party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3).

For us to accept review under RAP 2.5(a)(3), Mr. Pineda-Feliciano must demonstrate that the error is manifest and that the error is truly of constitutional dimension. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). For an error to be manifest, it must have resulted in actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Actual prejudice means the error must have had practical and identifiable consequences in the trial of the case. *Id*. "[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *Id*. at 100. An error is not manifest if the trial court could not have foreseen the potential error. *Id.*

Mr. Pineda-Feliciano never sought to invoke the juvenile court's jurisdiction under RCW 13.04.030(1)(e)(v)(C)(III). However, if we were to accept Mr. Pineda-Feliciano's

6

claim that RCW 13.04.030(1)(e)(v) is unconstitutional and that the proper remedy is severance of subsections (1)(e)(v)(C)(I) and (1)(e)(v)(C)(III), adult court jurisdiction over his case would have been improper, and he would not have received an adult court sentence. Consequently, we conclude that Mr. Pineda-Feliciano's constitutional claims of error are manifest and proceed to a review of the merits.

*Equal Protection*

Mr. Pineda-Feliciano argues RCW 13.04.030(1)(e)(v) violates equal protection because it subjects some juveniles to adult court jurisdiction and others to juvenile court jurisdiction. He argues the statute allows "some prosecutors, some defendants, and some judges" to agree to waive adult court jurisdiction, thus violating his constitutional right to equal protection. Br. of Appellant at 19. We disagree.

Equal protection requires that all similarly situated persons "with respect to the legitimate purpose of the law receive like treatment." *State v. Simmons*, 152 Wn.2d 450, 458, 98 P.3d 789 (2004). Equal protection is not intended to provide complete equality among individuals but is instead intended to provide equal application of the laws. *Id*. "A party challenging the application of a law as violating equal protection principles has the burden of showing that the law is irrelevant to maintaining a state objective or that it creates an arbitrary classification." *Id*.

Courts have typically used three levels of scrutiny to determine whether equal protection has been violated: (1) the "'rational relationship'" test, the lowest level of

scrutiny; (2) the "'intermediate scrutiny'" test; and (3) the "'strict scrutiny'" test, the

highest level of scrutiny. *In re Pers. Restraint of Hegney*, 138 Wn. App. 511, 529, 158

P.3d 1193 (2007) (quoting *State v. Schaat*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)).

Courts use the "strict scrutiny" test if the allegedly discriminatory classification affects a

suspect class or a fundamental right. *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334

(2006). The "intermediate scrutiny" test is used if gender-based classifications are at

issue or if the allegedly discriminatory classification affects a "semisuspect" class. *Id.*

Mr. Pineda-Feliciano argues RCW 13.04.030(1)(e)(v)(C)(III) creates an arbitrary

classification between juveniles who are subject to adult court jurisdiction and those who

are subject to juvenile court jurisdiction without reference to any sort of criteria or

guidelines. He contends this arbitrary classification affects his liberty, a fundamental

right. He thus argues that strict scrutiny should apply to this alleged arbitrary

classification. We disagree that the statute creates an arbitrary classification. Further,

our Supreme Court previously held "[j]uveniles are neither a suspect class nor semi-

suspect class." *In re Boot*, 130 Wn.2d 553, 572-73, 925 P.2d 964 (1996). Thus, the

"rational relationship" test applies. *Id.* at 573.

The "rational basis" test has been described as:

[T]he most relaxed and tolerant form of judicial scrutiny under the equal
protection clause. Under this test, the legislative classification will be upheld
unless it rests on grounds wholly irrelevant to achievement of legitimate state
objectives. The burden of proving the legislative classification unconstitutional is

upon the party challenging the legislation. That party has the heavy burden of overcoming a presumption that the statute is constitutional.

*State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993).

In *Boot*, our Supreme Court held that RCW 13.04.030 does not violate equal protection by automatically assigning juveniles who meet certain requirements to adult court. 130 Wn.2d at 572. There, the argument was that it was impermissible for the legislature to "draw a distinction between a young person who commits a crime one second before his sixteenth birthday, and one who commits a crime one second after his sixteenth birthday." *Id.* at 573. However, our Supreme Court disagreed, noting that the legislature's objective in enacting the statute was to "'increase the severity and certainty of punishment for youth and adults who commit violent acts,'" which was a "rational basis" for the statute. *Id.* (quoting LAWS OF 1994, 1st Sp. Sess., ch. 7, § 101).

Here, Mr. Pineda-Feliciano's equal protection argument is slightly different than the argument in *Boot* because he contends the provision of the statute allowing the parties and the court to agree to waive adult jurisdiction violates his equal protection rights. This argument fails because application of RCW 13.04.030(1)(e)(v)(C)(III) applied equally to him as it would any other 16- or 17-year-old accused of second degree murder. Mr. Pineda-Feliciano, like any other 16- or 17-year-old charged with second degree murder, could have elected to use RCW 13.04.030(1)(e)(v)(C)(III) to seek removal of his case to juvenile court. He did not attempt to take advantage of the statute so he cannot now

claim on appeal that his equal protection rights were violated. Mr. Pineda-Feliciano directs us to statistics demonstrating that juveniles of color are more likely to be tried in adult court. However, he notes that "[t]here does not seem to be any information about how many juveniles were afforded the opportunity to waive application of the original exclusive adult criminal jurisdiction." Br. of Appellant at 32. Mr. Pineda-Feliciano fails to demonstrate that the statute violated his right to equal protection under the law.

Mr. Pineda-Feliciano also argues RCW 13.04.030(1)(e)(v)(C)(III) violates equal protection because it affords the prosecutor unfettered discretion to decide when to remove a case to juvenile court. We disagree prosecutors wield such power. As the statute proscribes, agreement of both parties and the court is required to waive adult court jurisdiction. Consequently, the prosecutor lacks sole discretion to determine when and if a juvenile will be tried in adult court. Further, granting prosecutors discretion regarding whether to prosecute serious offenses in juvenile versus adult court is not arbitrary. Indeed, prosecutors are afforded wide latitude in their decisions to bring charges and whether to offer plea deals to defendants.

### *Due Process*

Mr. Pineda-Feliciano argues due process requires a *Kent*[3] hearing to determine whether the adult court should waive adult criminal court jurisdiction. The State

---

[3] *Kent v. United States*, 383 U.S. 541, 557, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966) (holding a juvenile defendant under juvenile court jurisdiction is entitled to a hearing

responds the Supreme Court has already determined that RCW 13.04.030 does not deprive a juvenile of due process because there is no constitutional right to be tried as a juvenile. We agree with the State.

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). "Compliance with procedural due process requires the court to identify the private interest affected by the official action, the risk of erroneous deprivation, the probable value of additional safeguards, and the State's interests." *Watkins*, 191 Wn.2d at 537.

Our Supreme Court recently reaffirmed that "'[t]here is no constitutional right to be tried in juvenile court.'" *Id.* (quoting *Boot*, 130 Wn.2d at 571). Further, "the right [to a *Kent* hearing] attaches only if a court is given statutory *discretion* to assign juvenile or adult court jurisdiction." *State v. Salavea*, 151 Wn.2d 133, 140, 86 P.3d 125 (2004) (emphasis added). Our Supreme Court has upheld the constitutionality of automatic adult criminal court jurisdiction for certain enumerated offenses in RCW 9.94A.030. *Boot*, 130 Wn.2d at 557-58.

---

prior to the court's discretionary decision to transfer the juvenile to adult court).

In *Watkins*, our Supreme Court explained that "[t]he statute in *Kent* provided the juvenile court with jurisdiction over all juvenile proceedings and the discretion to waive jurisdiction over a particular class of juvenile defendants." 191 Wn.2d at 540. In contrast, RCW 13.04.030(1)(e) "precludes our juvenile courts from presiding over a particular class of juveniles." *Id*. at 541. The court reasoned, "*Kent's* hearing requirement makes sense in the context of the . . . statute [at issue] because the juvenile court was vested with discretion to make a jurisdictional decision. But a hearing requirement would be absurd under Washington law because our juvenile court is statutorily precluded from presiding over this type of case." *Id.* Prior to *Watkins*, the court in *Boot* came to a similar conclusion: "[RCW 13.04.030] does not contemplate declination hearings, and they would serve no purpose in light of the legislative decision to vest exclusive original jurisdiction in the adult criminal court." 130 Wn.2d at 563.

Here, Mr. Pineda-Feliciano attempts to distinguish *Watkins* by arguing the court "was not asked to, nor did it consider that the same statute assigning exclusive original adult criminal jurisdiction allows for a discretionary decision to remove the matter to juvenile court jurisdiction under RCW 13.04.030(1)(e)(v)(III)." Br. of Appellant at 40. But the *court* is not afforded discretion in making the decision to assign juvenile or adult court jurisdiction. Indeed, the statute states the parties may agree to waive adult criminal jurisdiction with the court's approval. RCW 13.04.030(1)(e)(v)(C)(III). Mr. Pineda-Feliciano does not explain how RCW 13.04.030(1)(e)(v)(C)(III) would confer him a right

12

to a *Kent* hearing. He simply argues one must be held because the court has jurisdictional discretion. However, the court does not have statutory discretion to decide when to decline adult court jurisdiction. Rather, the court may only decline adult court jurisdiction if both parties agree.

RCW 13.04.030(1)(e)(v) is not violative of due process nor equal protection.

MITIGATING QUALITIES OF YOUTH

Mr. Pineda-Feliciano argues the trial court did not properly consider the mitigating qualities of youthfulness at sentencing. Specifically, Mr. Pineda-Feliciano contends his background, age, and psychological immaturity warranted a mitigated sentence. We disagree.

"Generally, a criminal defendant is permitted to appeal a standard range sentence only if the sentencing court fails to follow an established procedure." *State v. M.L.*, 114 Wn. App. 358, 361, 57 P.3d 644 (2002). When a defendant challenges a standard range sentence, this court reviews the challenge only to determine whether the trial court complied with statutory and constitutional requirements in imposing the sentence. *Osman*, 157 Wn.2d at 481-82.

The United States Supreme Court, as well as our Supreme Court, have held a court sentencing a juvenile must "consider the mitigating qualities of youth" and must have discretion to impose a sentence below the standard range. *State v. Houston-Sconiers*, 188 Wn.2d 1, 19, 391 P.3d 409 (2017); *Miller v. Alabama*, 567 U.S. 460, 481, 132 S. Ct.

2455, 183 L. Ed. 2d 407 (2012).  In considering a juvenile defendant's youth, the court

"must do far more than simply recite the differences between juveniles and adults."  *State*

*v. Ramos*, 187 Wn.2d 420, 443, 387 P.3d 650 (2017).

The sentencing court must consider factors like "the nature of the juvenile's

surrounding environment and family circumstances, the extent of the juvenile's

participation in the crime, and 'the way familial and peer pressures may have affected

him.'"  *Houston-Sconiers*, 188 Wn.2d at 23 (quoting *Miller*, 567 U.S. at 477).  The

sentencing court must also consider those qualities of youth including "'immaturity,

impetuosity, and failure to appreciate risks and consequences.'"  *Id.*  Finally, the

sentencing court "must consider how [the defendant's] youth impacted any legal defense,

along with any factors suggesting that the child might be successfully rehabilitated."  *Id.*

Here, the sentencing court properly considered Mr. Pineda-Feliciano's

youthfulness and the factors related to his youth.  The court recognized it "must evaluate

on the record those factors of a respondent's youthfulness, which may have impacted his

criminality.  And, thus, weigh those factors in fashioning the appropriate [sentence]."

RP at 29.  In its decision, the court considered Mr. Pineda-Feliciano's upbringing,

intelligence, and entry into the gang lifestyle at a young age.  However, the court

concluded Mr. Pineda-Feliciano's actions before and after the shooting, his apparent lack

14

of remorse, and his prior appearances before the court warranted a standard range

sentence.[4]

The court, in making its sentencing decision stated that shooting the victim in the

back was "deplorable" and that it did not think Mr. Pineda-Feliciano's youth "had

anything to do with that decision." RP at 43. The court also noted that Mr. Pineda-

Feliciano recorded a music video after the shooting in which he "flashed his firearm at

the camera and said, ha ha ha, that n[]er should have never started running if he didn't

want it in the back." RP at 43-44.

Further, the court considered Mr. Pineda-Feliciano's potential for rehabilitation.

The court noted for the record that it had "seen this young man numerous times and every

time I have seen him, he has been completely and totally, seemingly, honest with the

Court and stated his intention to reform his life, his circle of friends, and get his

education. He has never done so." RP at 44.

Finally, the court considered Mr. Pineda-Feliciano's upbringing and intelligence.

The court stated Mr. Pineda-Feliciano "does not have any abuse or trauma in his

childhood, as many of my juvenile respondents do," and that he is "average on the

---

[4] Mr. Pineda-Feliciano points out that the court twice incorrectly stated the victim "flash[ed] gang signs" at him that began the confrontation and led to the shooting. RP at 43. However, the State corrected the court on the record and stated it was Mr. Pineda-Feliciano who flashed gang signs that caused the victim to then follow him.

Whistler Intelligence Scale." RP at 44. The court found the fact that he was "beat into [becoming] a ga[ng] member at the age of 12" applied to his youthfulness but that his inability "to escape that gang style mindset" made the court "pessimistic" about his ability to change. RP at 44. The court ultimately ruled, "I recognize this respondent's youth. But, I can't bring myself to see any mitigating factors, given all of the previous chances he's had." RP at 45. The sentencing court meaningfully considered Mr. Pineda-Feliciano's youth.

Further, Mr. Pineda-Feliciano argues the court did not consider "impetuosity and thrill seeking of a young teen without the psychological development necessary to appreciate the risks and consequences of his behavior," the fact that he came from a seemingly "low-income family," and that he was "low average in verbal comprehension." Br. of Appellant at 56-57. Contrary to this argument, the sentencing court *did* consider Mr. Pineda-Feliciano's upbringing and family situation as well as his intelligence. As for his alleged "impetuosity and thrill seeking behavior," the court noted that Mr. Pineda-Feliciano had been before it multiple times, promised to change, yet did not do so. RP at 44. The court had also previously warned Mr. Pineda-Feliciano that he could not possess a gun yet "he has continued to carry firearms." *Id*. Mr. Pineda-Feliciano's contact with law enforcement and the juvenile justice system would have theoretically developed his ability to appreciate the risks and consequences of his behavior, but the court noted it had not.

16

The sentencing court meaningfully considered Mr. Pineda-Feliciano's youth and the relevant factors prior to its imposition of a standard range sentence.

VPA

Mr. Pineda-Feliciano argues that we should remand to the trial court for it to strike the VPA due to a recent change in the law. The State contends that we should decline the request because a defendant can motion the lower court to strike the VPA. We agree with Mr. Pineda-Feliciano and remand for the limited purpose of striking the VPA.

Former RCW 7.68.035(1)(a) (2018) required a VPA be imposed on any individual found guilty of a crime in superior court. In April 2023, the legislature passed Engrossed Substitute H.B. 1169 (H.B. 1169), 68th Leg., Reg. Sess. (Wash. 2023), that amended RCW 7.68.035 to prohibit the imposition of the VPA on indigent defendants. RCW 7.68.035 (as amended); H.B. 1169, § 4. H.B. 1169 took effect on July 1, 2023. Amendments to statutes that impose costs upon convictions apply prospectively to cases pending on appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Mr. Pineda-Feliciano's case is pending on direct appeal, and he was found to be indigent by the trial court. Accordingly, remand to the trial court for it to strike the VPA is appropriate.

The State argues we should not remand because Mr. Pineda-Feliciano "can bring a motion to strike the [VPA] to the Sentencing Court directly . . . at any time." Br. of Resp't at 43; RCW 7.68.035(5)(b). The State's argument is unpersuasive. Mr. Pineda-

Feliciano's case is pending on direct appeal, and we may therefore remand to have the trial court strike the VPA.

SAG

RAP 10.10 permits a defendant to file a pro se SAG if he believes his appellate counsel has not adequately addressed certain matters. Mr. Pineda-Feliciano filed a SAG raising one issue.

Mr. Pineda-Feliciano argues in his SAG that the music video in which he stated, "ha ha ha, that n[]er should have never started running if he didn't want it in the back," was recorded prior to the murder and had "nothing to do with the victim." RP at 44; SAG at 1. He contends if his phone was checked, law enforcement would have known it was recorded "days or weeks" before the murder. SAG at 1.

First, it is unclear what remedy Mr. Pineda-Feliciano seeks assuming the argument in his SAG is true. *See* RAP 10.10(c) ("[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors."). Further, the State noted Mr. Pineda-Feliciano's statement was recorded the day after the murder, and both the State and defense counsel stipulated on the record that the facts contained in both sentencing memorandums were accurate. Finally, the music video was not designated as a part of the record on appeal so we are unable to ascertain when it was recorded. Mr. Pineda-

No. 39762-9-III
*State v. Pineda-Feliciano*

Feliciano's recourse is to raise this issue in a personal restraint petition, not in a SAG. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

CONCLUSION

The provision in RCW 13.04.030 that allows a waiver of adult court jurisdiction upon agreement by the parties and the court does not violate a juvenile respondent's rights to due process or equal protection. The court adequately considered Mr. Pineda-Feliciano's youthfulness when it imposed a standard range sentence, and we remand for the limited purpose of striking the VPA from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.

19